# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2017AP146 |
| COMPLETE TITLE: | Daniel Marx, Fracsand, LLC, Michael Murray and R&R Management Funds, LLC, Plaintiffs-Respondents, v. Richard L. Morris and R.L. Co., LLC, Defendants-Appellants. |

ON CERTIFICATION FROM THE COURT OF APPEALS

| | |
|---|---|
| OPINION FILED: | April 2, 2019 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | November 7, 2018 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Eau Claire |
| JUDGE: | William M. Gabler, Sr. |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | |
| DISSENTED: | KELLY, J. concurs and dissents, joined by ABRAHAMSON, J. and R.G. BRADLEY, J. (opinion filed). |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the defendants-appellants, there were briefs filed by *Eric J. Magnuson* and *Robins Kaplan, LLP*, Minneapolis, Minnesota, with whom on the briefs were *J. Drew Ryberg* and *Ryberg Law Firm*, Eau Claire, and *Scott A. Johnson* and *Johnson & Johnson Law, LLP*, Minnetonka, Minnesota. There was an oral argument by *Eric J. Magnuson*.

For the plaintiffs-respondents, there was a brief filed by *Patrick G. Heaney*, *James A. Pelish*, and *Thrasher, Pelish & Heaney, Ltd.*, Rice Lake. There was an oral argument by *Patrick G. Heaney*.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2017AP146
(L.C. No. 2015CV213)

STATE OF WISCONSIN : IN SUPREME COURT

**Daniel Marx, Fracsand, LLC, Michael Murray and R&R**

**Management Funds, LLC,**

      **Plaintiffs-Respondents,**

  **v.**

**Richard L. Morris and R.L. Co., LLC,**

      **Defendants-Appellants.**

**FILED**

**APR 2, 2019**

Sheila T. Reiff
Clerk of Supreme Court

APPEAL from an order of the Circuit Court for Eau Claire County. *Affirmed and cause remanded.*

¶1 PATIENCE DRAKE ROGGENSACK, C.J. This appeal comes before us on certification from the court of appeals[1] pursuant to Wis. Stat. § (Rule) 809.61 (2015-16).[2] Two members of a limited liability company (LLC), Fracsand, LLC by Daniel Marx (Marx) and

---

[1] Marx v. Morris, No. 2017AP146, unpublished certification (Wis. Ct. App. Mar. 6, 2018).

[2] All subsequent references to the Wisconsin Statutes are to the 2015-16 version unless otherwise indicated.

Management Funds, LLC by Michael Murray (Murray), brought an action against another member, Richard Morris (Morris) and his LLC, R.L. Co., LLC, after North Star Sand, LLC (North Star) sold valuable assets to a company owned by Morris. At the time of the sale, Morris was a manager of North Star.

¶2 Marx and Murray alleged that Morris willfully failed to deal fairly with them while having a material conflict of interest in the transaction, in violation of Wis. Stat. § 183.0402(1). They also alleged a number of common-law claims involving improper self-dealing. Marx and Murray brought all their claims in their individual LLC and personal capacities rather than in the name of North Star.

¶3 Morris moved for summary judgment. The circuit court denied Morris's motion,[3] and the court of appeals certified the appeal to this court to answer two questions:

> 1. Does a member of a limited liability company (LLC) have standing to assert a claim against another member of the same LLC based on an injury suffered primarily by the LLC, rather than the individual member asserting the claim?

> 2. Does the Wisconsin Limited Liability Company Law, Wis. Stat. ch. 183, preempt common law claims by one member of an LLC against another member based on the second member's alleged self-dealing?

Marx v. Morris, No. 2017AP146, unpublished certification (Wis. Ct. App. Mar. 6, 2018).

---

[3] The Honorable William M. Gabler, Sr. of Eau Claire County presided.

2

¶4 We accepted certification of the appeal and now conclude the following: first, the members of an LLC have standing to assert individual claims against other members and managers of the LLC based on harm to the members or harm to the LLC. Corporate principles of derivative standing do not apply to the distinct business form of an LLC.

¶5 Second, Marx and Murray's common law claims survive because they have not been displaced at this point in the litigation by particular provisions of North Star's Operating Agreement or by Wis. Stat. ch. 183. Third, there are genuine issues of material fact as to whether Morris violated Wis. Stat. § 183.0402(1) by dealing unfairly with Marx and Murray, and potentially with regard to the common law claims. For these reasons, we affirm the decision of the circuit court and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

¶6 North Star is a limited liability company formed under Wisconsin law in November 2011. The company's goal was to own and mine land containing silica sand, a type of sand used in fracking operations.

¶7 North Star's membership consisted of six limited liability companies, which in turn were owned by six individuals. Fracsand, LLC was owned by Marx; R&R Management Funds, LLC owned by Murray; R.L. Co., LLC owned by Morris; Hub Investments, LLC owned by Brian Johnson (Johnson); Glorvigen

Investment Group, LLC owned by Rick Glorvigen (Glorvigen); and C&T Sand, LLC owned by R. Thomas Toy (Toy).[4] Morris, an attorney, had previously represented both Murray and Johnson. Glorvigen, an accountant, had prepared Morris's personal taxes for at least 20 years.

¶8 Morris assisted in drafting North Star's Operating Agreement, and drafted two of the Amendments to the Operating Agreement. According to Marx and Murray, Morris was North Star's attorney. They allege that he was paid by North Star for his legal work on behalf of the company, and some of his equity in North Star was received in compensation for his legal work. Morris disputes this. However, it is undisputed that he was a manager of North Star in his capacity as a North Star director.[5]

¶9 North Star's Operating Agreement reflected an understanding that the members would be free to pursue outside business opportunities. Transacting business with companies who had business relationships with North Star was permitted:

> The individuals serving as Directors, as well as the Members and their respective officers, board of directors, directors, shareholders, partners, and affiliates, may engage independently or with others in other business ventures of every nature and description. Nothing in this Agreement shall be deemed to prohibit any Director, or the Members or

---

[4] While the members of North Star are actually LLC's owned by the six individuals involved with North Star, the parties and the court of appeals referred to the six individuals by name for the sake of simplicity. This opinion will do so as well.

[5] Operating Agmt., Sections 5.1, 5.2.

their respective officers, board of directors, directors, shareholders, partners, and affiliates, from dealing or otherwise engaging in business with Persons transacting business with the Company. Neither the Company, any Director, or any Member shall have any right by virtue of this Agreement, or the relationship created by this Agreement, in or to such other ventures or activities, or to the income or proceeds derived from such other ventures or activities, and the pursuit of such ventures shall not be deemed wrongful or improper.[6]

¶10 The Operating Agreement also required that members have prior notice of any vote that may occur during a meeting of members:

No matter shall be voted upon at a meeting of Members unless at least 5 days' notice of the matter to be voted on is given or such notice is waived by any Member who is entitled to vote and who has not received notice.[7]

Further, it required that prior notice be given of any matter to be voted upon at a directors' meeting:

No matter shall be voted upon at a meeting of the Directors unless at least 24 hours' notice of the matter to be voted on is given or such notice is waived by any Director not receiving it.[8]

However, directors did not have the authority to: "Possess Company property, or assign rights in specific Company property, for other than a purpose of the Company."[9]

---

[6] Operating Agmt., Section 5.8(b).

[7] Operating Agmt., Section 5.7 d.

[8] Operating Agmt., Section 5.3 d.

[9] Operating Agmt., Section 5.5 a. ii.

5

¶11 North Star eventually hired an engineering firm to help it identify potential silica sand reserves, and entered into a number of option agreements for the purchase of land in Jackson County, Wisconsin. North Star also entered into a lease for a property that could be used as a railhead to transport silica sand from the Jackson County properties. The members decided to create a separate entity to control the purchase agreements for certain properties, called the Pine Creek Reserves, that contained substantial silica sand reserves. This entity became Westar Proppants, LLC (Westar), a wholly owned subsidiary of North Star. North Star assigned its Pine Creek purchase options to Westar on the same day Westar was formed.

¶12 Many of Westar's purchase options were set to expire on December 31, 2013. Concern was expressed that North Star and Westar had too much land under option contracts. The members began to discuss the possible cancellation of some of their options. On December 31, 2013, the same day Westar's purchase options were set to expire, the members of North Star met by telephone to discuss Westar's future.

¶13 During this meeting, Morris informed the other members that he and two other people, Gerald Green (Green) and Scott Wesch (Wesch), had formed an entity called DSJ Holdings, LLC (DSJ). Morris also informed the group that he had an ownership interest in DSJ. He stated that DSJ was interested in purchasing Westar and was willing to pay $70,000. At this time, Glorvigen made a motion for North Star to keep Westar. Marx seconded the motion, and it passed by vote of 4-2. Marx,

6

Murray, Glorvigen, and Toy all voted in favor of the motion to keep Westar, while Morris and Johnson voted against it.

¶14  Immediately after the vote, Morris indicated that he may withdraw from North Star.  Marx and Murray allege that Morris became "very aggressive" and told Toy that "you're going to lose your million bucks."  After a brief discussion, Morris made a motion for North Star to sell Westar to DSJ for $70,000.  Murray immediately objected to Morris's motion, arguing that there had been insufficient notice, that a vote had already occurred, and that Morris was conflicted.  Despite these objections, a second vote occurred, and Morris's motion passed 4-2.  Morris, Johnson, Glorvigen, and Toy voted for North Star to sell Westar to DSJ, while Marx and Murray voted against the sale.

¶15  DSJ subsequently assigned Westar's membership units to R.L. Co., LLC (Morris's LLC) and to Wesch.  Morris and Green then formed Hixton Trans-load Facility, LLC (Hixton Trans-load) for the purpose of securing purchase agreements for a new rail head site specifically for the Pine Creek Reserves property. Westar, along with Hixton Trans-load, was sold to Unimin Corporation in early 2015 for what has been alleged to be a substantial sum.[10]

¶16  In August 2014, North Star unanimously voted to sell its remaining silica sand land assets to Badger Silica.  The

---

[10] The details of the Westar sale to Unimin are subject to a confidentiality order.

members signed a "Member Distribution Receipt and Acknowledgement" as part of this transaction, which memorialized the amount each member would receive from the transaction. The receipt also contained the following language:

> As of the date hereof, none of the undersigned members have a claim against North Star or against any of the other members of the Company other than for the amount of the distribution set forth on Exhibit A. or for their pro rata share of any retained amounts.

Morris later asked Marx and Murray to sign a different, all-encompassing release, which they refused to do.

¶17 Marx and Murray alleged five causes of action against Morris and his LLC: violation of Wis. Stat. § 183.0402, breach of fiduciary duty, breach of fiduciary duty as corporate counsel, unjust enrichment, and breach of implied covenant of good faith and fair dealing. They also requested punitive damages. Morris moved for summary judgment on all claims. He argued, among other things, that Marx and Morris's claims belonged only to North Star, and that Wis. Stat. ch. 183 supersedes and replaces any common law duties of LLC members.

¶18 The circuit court denied the motion for summary judgment. It held that there were disputed issues of material fact on the Wis. Stat. § 183.0402 claim, and decided to "wait until the conclusion of the evidence to determine if there are sufficient facts to enable a jury to make findings of fact with respect to [Marx and Murray's other claims]."

¶19 The court of appeals certified the appeal to us. Marx, No. 2017AP146, unpublished certification. We accepted the

8

certification, and now affirm the circuit court's order denying the Defendants-Appellants' motion for summary judgment.

## II. DISCUSSION

### A. Standard of Review

¶20 This case requires us to interpret an LLC's operating agreement, interpret a statute, determine whether a party has standing, and review a denial of summary judgment. An LLC's operating agreement is a contract. See, e.g., Gottsacker v. Monnier, 2005 WI 69, ¶22, 281 Wis. 2d 361, 697 N.W.2d 436. "Contract interpretation presents a question of law that we review independently of previous decisions of the circuit court . . . but benefitting from [its] discussions." Estate of Kriefall v. Sizzler USA, 2012 WI 70, ¶14, 342 Wis. 2d 29, 816 N.W.2d 853.

¶21 "Statutory interpretation and the application of a statute to a given set of facts are questions of law that we review independently, but benefiting from" the analysis of the circuit court. Marder v. Bd. of Regents of Univ. of Wis. Sys., 2005 WI 159, ¶19, 286 Wis. 2d 252, 706 N.W.2d 110. Whether a party has standing is similarly a question of law for our independent review. McConkey v. Van Hollen, 2010 WI 57, ¶12, 326 Wis. 2d 1, 783 N.W.2d 855. Finally, we review decisions on summary judgment motions independently, applying the same methodology as the circuit court while once again benefitting from its analysis. Dufour v. Progressive Classic Ins. Co., 2016 WI 59, ¶12, 370 Wis. 2d 313, 881 N.W.2d 678. "The standards set forth in Wis. Stat. § 802.08 are our guides." Id.

B. Overview of Limited Liability Companies

¶22 We begin with a brief overview of the history and general principles of limited liability companies. An LLC is "an unincorporated association of investors, members in LLC parlance, whose personal liability for obligations of the venture is limited to the amount the member has invested." Joseph W. Boucher et al., LLCs and LLPs: A Wisconsin Handbook § 1.4 (6th ed. 2018). LLCs combine desirable features of two other business forms, partnerships and corporations.

¶23 Similar to a partnership, an LLC allows for "informality and flexibility of organization and operation, internal governance by contract, direct participation by members in the business, and no taxation at the entity level." Id. Similar to a corporation, however, an LLC grants its investors limited liability such that a member "is not personally liable for any debt, obligation or liability of the limited liability company, except that a member or manager may become personally liable by his or her acts or conduct other than as a member." Wis. Stat. § 183.0304(1). Therefore, as with a shareholder in a corporation, each LLC member's potential liability to third parties is limited to the amount the member chose to invest in the LLC.

¶24 The first LLC act was passed by Wyoming in 1977[11] upon a request from an oil company. Larry E. Ribstein & Robert R.

---

[11] Wyo. Stat. Ann. § 17-15-101 to 136 (1977).

Keatinge, Ribstein & Keatinge on Limited Liability Companies § 1.2 (June 2018 ed., West 2018). The oil company wanted a business form that could offer it limited liability without subjecting it to the "double taxation" applicable to corporations.[12] Id. Florida similarly enacted its own LLC act in 1982.[13] These acts did not immediately lead to a surge in the creation of LLCs, nor did other states soon enact their own LLC statutes, perhaps due to uncertainty regarding how LLCs would be taxed. Id.

¶25 In 1988, however, the Internal Revenue Service issued Rev. Rul. 88-76, 1988-2 C.B. 360, which made clear that properly organized LLCs would be treated as partnerships for tax purposes. See id. The Revenue Ruling examined the tax treatment of a Wyoming LLC. According to the Revenue Ruling, the LLC's tax treatment depended on whether it possessed corporate characteristics such as "continuity of life, centralization of management, limited liability, and free transferability of interests." Rev. Rul. 88-76, 1988-2 C.B. 360. The IRS determined that because the LLC "lack[ed] a

---

[12] Unless their form permits a subchapter S election, corporations, unlike most LLCs, are taxed at the entity level on their income. When dividends are distributed to shareholders, the dividends are then also taxed on the shareholders' individual tax returns. See 26 U.S.C. §§ 11, 61(a)(7); J. William Callison & Maureen A. Sullivan, Partnership Law and Practice: General and Limited Partnerships, § 3.1 (2018-19 ed., West 2018).

[13] Florida Limited Liability Company Act, Fla. Stat. ch. 608 (Supp. 1982).

11

preponderance" of the major corporate characteristics, it would be classified as a partnership for tax purposes. Id. This decision has been facilitated by the "check-the-box" regulations, under which even single member LLCs may now choose to be taxed as a partnership. Treas. Reg. § 301.7701-3(a). After that Revenue Ruling, all 50 states and the District of Columbia enacted their own LLC statutes,[14] including Wisconsin in 1994.[15]

¶26 In Wisconsin, one or more persons may form an LLC by filing articles of organization (essentially a notice document) with the Department of Financial Institutions. Wis. Stat. § 183.0201; LLCs and LLPs: A Wisconsin Handbook, supra, at § 1.6. Members generally draft a contract known as an operating agreement, which becomes the LLC's principle governing document and its main source of "law" regarding the company's ownership and management. LLCs and LLPs: A Wisconsin Handbook, supra, at §§ 1.6, 3.60; Wis. Stat. ch. 183.

¶27 Wisconsin's LLC statute reflects the importance of flexibility and freedom of contract in organizing an LLC. LLCs and LLPs: A Wisconsin Handbook, supra, at §§ 1.6, 1.10. For this reason, many of the provisions of ch. 183 furnish default rather than mandatory rules. Id. at § 4.31. The default rules

---

[14] See Larry E. Ribstein & Robert R. Keatinge, Ribstein & Keatinge on Limited Liability Companies § 1.2 (June 2018 ed., West 2018) and accompanying footnotes for a compilation of state legislation permitting the formation of LLCs.

[15] Wis. Stat. ch. 183 (1993-94).

are designed to structure LLCs in a way that average businesspeople would view as reasonable; the members of an LLC are free to alter these rules in their operating agreement if they prefer a different arrangement. Id. at §§ 1.6, 3.63. However, all the default rules apply unless an operating agreement unambiguously states otherwise: "if an operating agreement is ambiguous as to whether the members intended to override a particular statutory default term, the statutory default term governs." Lenticular Europe, LLC v. Cunnally, 2005 WI App 33, ¶18, 279 Wis. 2d 385, 693 N.W.2d 302.

¶28 The members of an LLC make contributions to the LLC in exchange for their interest in the company. LLCs and LLPs: A Wisconsin Handbook, supra, at § 4.8. The value of each member's contribution determines that member's percentage ownership interest. Under the default rules, each member's economic rights are proportional to his or her percentage of the members' total contributions to the LLC.[16] Wis. Stat. § 183.0503. A member whose contributions represent 40 percent of the total contributions is therefore entitled to 40 percent of any distributions.

¶29 The relationship among members of an LLC in terms of governance depends, to some extent, on whether the LLC is

---

[16] Contributions may consist of cash, property or services rendered, or promissory notes or other written obligations to provide cash or property or to perform services. The operating agreement generally determines the value of each member's contribution. Wis. Stat. § 183.0501.

member-managed or manager-managed.  In a member-managed LLC, the default rule is that voting rights regarding company business are allocated according to each member's percentage ownership interest, and a vote representing over 50 percent of the total value of contributions is required to authorize an action.  Wis. Stat. § 183.0404(1)(a).  A member whose contributions represent 40 percent of the total contributions would thus hold 40 percent of the voting power.  Generally, each member of a member-managed LLC is considered an agent of the LLC, and each such member has apparent authority to bind the LLC in the ordinary course of business.[17]  Wis. Stat. § 183.0301(1)(a) & (b).  An LLC is considered member-managed unless its articles of organization specifically designate it as manager-managed.  Wis. Stat. § 183.0401(1); LLCs and LLPs: A Wisconsin Handbook, supra, at § 4.33.

¶30 If an LLC is manager-managed, each manager gets one vote on matters relating to the LLC's business, with a majority vote required to take an action.[18]  Wis. Stat. § 183.0404(1)(b).  Unlike a member-managed LLC, the members of a manager-managed LLC are not agents of the LLC simply by virtue of being members.

---

[17] Section 5.6 of the North Star Operating Agreement states that except when "powers are exclusively reserved to the Members . . . or as expressly provided in this Agreement, the Members shall not have the power . . . to bind or obligate the Company in any manner."

[18] North Star was manager-managed by its Directors, all of whom owned members.  Operating Agmt., Section 5.1, 5.2.

Wis. Stat. § 183.0301(2)(a). Members of a manager-managed LLC therefore do not have apparent authority to bind the LLC in the ordinary course of business simply by being members. See § 183.0301(2)(a) & (b). Regardless of whether an LLC is member-managed or manager-managed, however, there are certain actions such as amending the operating agreement or issuing an ownership interest that require the consent of all the members. § 183.0404(2).

¶31 A member's ownership interest in the LLC is personal property. Wis. Stat. § 183.0703. Wisconsin's LLC act applies the entity theory[19] of property rights, so a member has no interest in any specific property of the LLC. See LLCs and LLPs: A Wisconsin Handbook, supra, at § 4.4. For example, if a member of an LLC transfers real estate to the LLC in exchange for an ownership interest in the LLC, that member no longer has any ownership interest in the real estate. Instead, the LLC owns the real estate, and the member owns personal property in the form of an ownership interest in the LLC. Wis. Stat. § 183.0701(1); LLCs and LLPs: A Wisconsin Handbook, supra, at

---

[19] The entity theory is often contrasted with the aggregate theory. Under the entity theory, the LLC is a distinct legal person that is separate from its members, owns its property, and is liable on its obligations. The members have an ownership interest only in the LLC itself. Under the aggregate theory, in contrast, the LLC would be considered merely an aggregation of its individual members, and each member would own an undivided interest in the specific property and obligations of the LLC. See, e.g., Partnership Law and Practice, supra, at § 3.1; LLCs and LLPs: A Wisconsin Handbook, supra, at § 5.31.

15

§ 4.4. As it is personal property, a member's economic interest in an LLC is generally freely transferable. In contrast to the corporate model, however, the transfer of a member's economic interest does not make the transferee a member of the LLC, nor does it give the transferee any management or voting rights. J. William Callison & Maureen A. Sullivan, Partnership Law and Practice: General and Limited Partnerships, § 4.1 (2018-19 ed., West 2018); Wis. Stat. § 183.0704.

¶32 Unlike corporations, LLCs generally are not taxed at the entity level.[20] 26 U.S.C. § 701 (2016).[21] "Instead, the LLC's gains, losses, income, deductions, and credits will pass through to the members and be allocated among the members in proportion to their interests in the LLC." LLCs and LLPs: A Wisconsin Handbook, supra, at § 5.33. Each member's share of the LLC's gains, losses, income, deductions, and credits will then appear on the member's individual tax return as if the member had realized them directly. Ribstein & Keatinge on LLCs, supra, at § 17.2; 26 U.S.C. § 702(b). For example, if a member owns a 30 percent interest in an LLC, that member will realize 30 percent of the LLC's gains, losses, income, deductions, and credits on the member's individual tax return.

---

[20] While LLCs are generally treated as partnerships for tax purposes, they have the option of being taxed as a corporation if they so choose. Treas. Reg. § 301.7701-3(b)(1)(ii).

[21] All subsequent references to the United States Code are to the 2016 version unless otherwise indicated.

16

¶33 Although we could describe many interesting hypotheticals about the financial choices that LLCs may elect, we choose not to do so because such hypotheticals have absolutely no relevance to the case before us. Blasing v. Zurich Am. Ins. Co., 2014 WI 73, ¶73, 356 Wis. 2d 63, 850 N.W.2d 138 (concluding that "[t]his court does not issue advisory opinions based on non-existent facts."). As we explained earlier, North Star is governed by its Operating Agreement. That Agreement unambiguously elected that North Star is to be treated as a partnership where all the losses and gains of the LLC flow through to its individual members.

¶34 For example, Article 3.1(b)(3) of the Operating Agreement states that its "foregoing provisions relating to the maintenance of Capital Accounts are intended to comply with Regulations § 1.704-1(b), and shall be interpreted and applied in a manner consistent with such Regulations." Regulations § 1.704-1(b) assures a partner's distributive share is affected within that partner's capital account.[22] Stated otherwise, compliance with Regulation § 1.704-1(b) was chosen for North Star so that its income, gain, loss and deductions would pass through to its individual members, just as they would if North Star were a partnership. Therefore, as we explain more fully below, an injury to North Star is not the same as an injury to a corporation, and concluding that it is, demonstrates a lack of

---

[22] Regulations § 1.704-1(b)'s full citation is 26 CFR 1.704-1(b).

understanding of basic principles that control North Star, LLC. Accordingly, we analyze the issues presented with principles that are relevant to the case now before us.

## C. Standing

¶35 We first consider whether Marx and Murray have standing to assert individual claims against Morris for injuries that are alleged to have occurred here.[23] In order to have standing to sue, a party must have a personal stake in the outcome of the controversy. City of Madison v. Town of Fitchburg, 112 Wis. 2d 224, 228, 332 N.W.2d 782 (1983). "Being damaged, however, without more, does not automatically confer standing." Krier v. Vilione, 2009 WI 45, ¶20, 317 Wis. 2d 288, 766 N.W.2d 517. Instead, "plaintiffs must show that they suffered or were threatened with an injury to an interest that is legally protectable." Id.

¶36 Wisconsin Stat. ch. 180, which governs corporations, sets forth a detailed list of procedures and requirements for corporate shareholders seeking to bring claims on behalf of the corporation, i.e., as derivative actions. The provisions of

---

[23] The court of appeals formulated the question as: "[d]oes a member of a limited liability company (LLC) have standing to assert a claim against another member of the same LLC based on an injury suffered primarily by the LLC, rather than the individual member asserting the claim?" Marx, No. 2017AP146, unpublished certification. This formulation could be read to involve an assumption that an injury to the LLC and an injury to a member are mutually exclusive. Due in part to the pass-through nature of North Star, LLC, as more fully explained herein, we reject such an assumption.

Wis. Stat. §§ 180.0740 through 180.0747 set out details such as when a shareholder has standing to maintain a derivative action, procedures the shareholder must follow, and when a court must dismiss a derivative action.  See Wis. Stat. §§ 180.0741, 180.0742, 180.0744.  These procedures evince a recognition of the long history of derivative action principles in Wisconsin corporate law.  See, e.g., Cook v. Berlin Woolen Mill Co., 43 Wis. 433, 447-48 (1877).

¶37 In the corporate context, we have long held that individual shareholders cannot directly sue a corporation's directors or officers when the "primary injury" resulting from the actor's wrong is to the corporation itself.  See, e.g., Rose v. Schantz, 56 Wis. 2d 222, 229-30, 201 N.W.2d 593 (1972). Instead, a shareholder who wishes to seek redress for an injury "primarily" to the corporation must bring a derivative action on behalf of the corporation.  See id.; Notz v. Everett Smith Grp., Ltd., 2009 WI 30, ¶20, 316 Wis. 2d 640, 764 N.W.2d 904.

¶38 Morris encourages us to read corporate principles of derivative standing into ch. 183 and hold that Marx and Murray's claims belong exclusively to North Star.  We decline to do so. An LLC is a "creature of statute," Lenticular, 279 Wis. 2d 385, ¶17; therefore, the absence of statutory procedures that limit actions against others for injuries to the LLC is significant. Additionally, as we have explained earlier, North Star, LLC is a distinct business form that differs significantly from a corporation.  Accordingly, we decline to import corporate principles of derivative standing into ch. 183 to preempt claims

19

by individual North Star members. This conclusion is not driven by who "owns" the claim, but rather, by Wis. Stat. § 183.0402 and the partnership-like mode of operation North Star, LLC selected in its Operating Agreement.

¶39 In contrast to the statutes that limit standing to bring derivative actions in ch. 180, the only provision of ch. 183 relating to suits in the name of an LLC is Wis. Stat. § 183.1101. That section states in relevant part:

> (1) Unless otherwise provided in an operating agreement, an action on behalf of a limited liability company may be brought in the name of the limited liability company by one or more members of the limited liability company, whether or not the management of the limited liability company is vested in one or more managers, if the members are authorized to sue by the affirmative vote as described in s. 183.0404(1)(a).

¶40 Wisconsin Stat. § 183.1101 does not require that claims against LLC members be brought in the name of the LLC, nor does it otherwise limit a member's ability to sue other members or managers in their individual capacities. It merely requires that if an action of any kind is to be brought in the name of the LLC, against anyone, it must be authorized by a majority vote of disinterested members. Section 183.1101, which is silent on a member's right to sue on his own behalf, does not abrogate the plain language of Wis. Stat. § 183.0402(1)(a), which prohibits the "willful failure to deal fairly with the limited liability company or its members" by a member or manager.

20

¶41 As we have explained, an LLC is a business form created by statute. Other states have written standing rules that apply to corporations into their LLC statutes, including who may maintain an action for an injury to an LLC, demand requirements, and the role of the court. See, e.g., Mich. Comp. Laws § 450.4510; Conn. Gen. Stat. § 34-271e. Wisconsin's legislature has not chosen to enact such statutes. We will not judicially import ch. 180's corporate derivative standing provisions into the LLC context where the legislature has not done so.

¶42 Morris argues that Wis. Stat. § 183.0402(2) denies the members of an LLC standing to assert individual claims under § 183.0402(1). Section 183.0402(2) states in relevant part:

> Every member and manager shall account to the limited liability company and hold as trustee for it any improper personal profit derived by that member or manager without the consent of a majority of the disinterested members or managers, or other persons participating in the management of the limited liability company, from any of the following:
>
> (a) A transaction connected with the organization, conduct or winding up of the limited liability company.

Morris argues that because this section requires improper personal profits to be held in trust for the LLC, but not for the individual members, it modifies § 183.0402(1) by clarifying that a § 183.0402 injury is to the LLC rather than to individual members.

¶43 Morris's argument assumes that injuries to North Star, LLC and injuries to individual members are mutually exclusive.

21

As discussed above, however, corporate principles of standing do not apply to LLCs. Specifically, in the matter before us, injuries to North Star and to its members are not mutually exclusive because financial injury to North Star flows through to its members just as an injury would if North Star were a partnership rather than an LLC. Therefore, the question is not whether the alleged injury is to the LLC or to its individual members. Rather, the question is simply whether the individual member bringing the action has suffered an injury to a legally protected interest.

¶44 Furthermore, in addition to the lack of statutory support for applying statutory corporate principles of derivative standing to an LLC, in a corporation, gains and losses do not flow through to the individual shareholders. Instead, the corporation's income is first taxed at the entity level. 26 U.S.C. § 11. Shareholders do not claim a corporation's gains and losses on their individual tax returns. Ribstein and Keatinge on LLCs, supra, at § 16.2. They pay taxes only on the dividends, if any, they receive from the corporation, and are not taxed on capital gains and losses unless and until they choose to sell their corporate shares.[24]

---

[24] While this is true of a "regular" corporation, or C corporation, William Meade Fletcher, Fletcher Cyclopedia of the Law of Corporations § 7025.50 (West 2018), we note that some eligible corporations can choose to be taxed as subchapter S corporations. Id. Corporations must meet certain criteria to be eligible for S corporation election, such as having fewer than 100 shareholders and having only one class of stock. Id. at § 7026; 26 U.S.C. § 1361.

William Meade Fletcher, Fletcher Cyclopedia of the Law of Corporations § 6972.50 (West 2018).

¶45 In contrast, North Star has elected to be taxed as a partnership.[25] This is the usual form of operation for an LLC. See Rev. Rul. 88-76, 1988-2 C.B. 360; 26 U.S.C. § 701. When treated as a partnership, the company's gains and losses flow through to individual members and are realized directly by each member, each year, on that member's individual tax return.[26] See id.; Gottsacker, 281 Wis. 2d 361, ¶19. North Star operates such that its gains and losses are directly credited to or deducted from each member's capital account, flowing through to each member's individual tax return.[27] This is a concept used in partnership law that is not present in the corporate context. Each member's interest in North Star, LLC is that member's personal property, and includes the right to a share of the profits and losses of the LLC.[28] Wis. Stat. §§ 183.0703,

---

[25] See e.g., Operating Agmt., §§ 3.1(b)(3), 3.1(d), 3.1(g), 4.3, 4.4.

[26] Id.

[27] As a general principle, and specifically in the matter now before us, a member's capital account measures that member's equity in the LLC. Each member's capital account is credited with his initial contribution and any subsequent contributions to the LLC. It is then increased by the member's share of any income and gain and decreased by the member's share of losses, as well as any distributions to that member. See, e.g., Ribstein and Keatinge on LLCs, supra, at § 17.10; 26 U.S.C. § 701.

[28] See e.g., Operating Agmt., §§ 4.5, 4.6, 4.7.

183.0102(11); <u>see also</u> <u>Gottsacker</u>, 281 Wis. 2d 361, ¶50 (Roggensack, J., concurring). For these reasons, there is generally a much closer financial connection between harm to an LLC and harm to its members than between harm to a corporation and harm to its shareholders. North Star's Operating Agreement has chosen this usual form of operation. Furthermore, no Wisconsin court has applied ch. 180's derivative standing rules in the context of a ch. 183 LLC, and in the absence of statutory support, we decline to do so.

¶46 Here, Marx and Murray assert claims against Morris, who was a member and a manager of North Star. They claim Morris, individually and through Fracsand, LLC, willfully failed to deal fairly with them in connection with a matter in which he had a material conflict of interest, contrary to his statutory duty as a member and manager under Wis. Stat. § 183.0402. They allege that they, in their individual member capacities, have been injured as a result. Therefore, they have alleged "an injury to an interest that is legally protectable." <u>See</u> <u>Krier</u>, 317 Wis. 2d 288, ¶20. The potential that North Star also may have been injured does not affect Marx and Murray's standing. Accordingly, we conclude that Marx and Murray have standing to assert individual member claims against Morris, in his capacity as a member and as a manager of North Star, whether based on injury independent of or secondary to North Star.

### D. Common Law Claims

¶47 We next address whether Marx and Murray's common law claims are eliminated by the Wisconsin LLC Act. As mentioned

24

earlier, the second question certified by the court of appeals is: "[d]oes the Wisconsin Limited Liability Company Law, Wis. Stat. ch. 183, preempt common law claims by one member of an LLC against another member based on the second member's alleged self-dealing?"  The answer to this question depends on the specific common law claims a member brings and the facts attendant to those claims.[29]  In this case, the claims asserted by Marx and Murray, breach of fiduciary duty, unjust enrichment and breach of the covenant of good faith and fair dealing, are not displaced by ch. 183 based on the record before us.

¶48  Wisconsin Stat. § 183.1302(2) provides that "[u]nless displaced by particular provisions of this chapter, the principles of law and equity supplement this chapter."  Section 183.1302(2) has not been interpreted previously.  "The purpose of statutory interpretation is to determine what the statute means so that it may be properly applied."  Westmas v. Creekside Tree Serv., Inc., 2018 WI 12, ¶18, 379 Wis. 2d 471, 907 N.W.2d 68.

¶49  We begin with the plain meaning of the words chosen by the legislature.  State ex rel. Kalal v. Circuit Court for Dane Cty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110.  If they

---

[29] The common law fiduciary obligation of a corporate majority shareholder to a corporate minority shareholder does not transfer to an LLC context because of the differing forms of business entities.  Wisconsin Stat. § 183.0402 also may bear on a claim of breach of fiduciary duty, depending on the nature of the allegations.  Gottsacker v. Monnier, 2005 WI 69, 281 Wis. 2d 361, ¶45, 697 N.W. 436 (Roggensack, J. concurring).

evidence a plain, clear statutory meaning without ambiguity, we generally go no further. State v. Grunke, 2008 WI 82, ¶22, 311 Wis. 2d 439, 752 N.W.2d 769. However, if the statute is subject to more than one reasonable interpretation by well-informed people, it is ambiguous, and we may consult legislative history. Westmas, 379 Wis. 2d 471, ¶20.

¶50 Here, Marx and Murray raise equitable claims against Morris as a member and as a manager: breach of fiduciary duty, unjust enrichment and breach of the covenant of good faith and fair dealing.[30] The only "particular provision" that has been raised by Morris is Wis. Stat. § 183.0402. However, he does not develop an argument in regard to how each of these common law claims has been displaced. Furthermore, from the record before us, we cannot determine the full scope of these claims. That is, we cannot determine if they include only allegations that come within the ambit of § 183.0402 or something more.

¶51 In addition, Wis. Stat. § 183.1302(2) comes from the Revised Uniform Partnership Act, Unif. P'ship Act § 104(a) (Unif. Law Comm'n 1994). The drafters of the act described the provision as a "broad statement" that incorporates "not only the law of agency and estoppel and the law merchant mentioned in the UPA, but all of the other principles listed in UCC Section 1-103: the law relative to capacity to contract, fraud,

---

[30] They allege that Marx breached his fiduciary duty as an attorney as well as in his capacity as member and manager of North Star.

26

misrepresentation, duress, coercion, mistake, bankruptcy, and other common law validating or invalidating causes." Id., § 104 cmt.

¶52 Other states that have included this provision in their LLC acts have interpreted it broadly as permitting common law claims and defenses that have not been specifically abrogated. See, e.g., Bushi v. Sage Health Care, PLLC, 203 P.3d 694, 699 (Idaho 2009) (interpreting the same provision as codified in Idaho's LLC statute and concluding that members of an LLC owe one another fiduciary duties); Pannell v. Shannon, 425 S.W.3d 58, 82 n.22 (Ky. 2014) (interpreting the same provision as codified in Kentucky's LLC statute as permitting a common law laches defense). Further, other states that have statutorily eliminated common law duties such as fiduciary duties in LLCs have done so clearly and explicitly. See, e.g., Ohio Rev. Code Ann. § 1705.281 (West 2017) ("[t]he only fiduciary duties a member owes to a limited liability company and the other members are the duty of loyalty and the duty of care set forth in divisions (B) and (C) of this section."); see also Haw. Rev. Stat. § 428-409 (2017); Or. Rev. Stat. § 63.155(1) (2017); Vt. Stat. Ann. tit. 11, § 4059(a) (2018); Wash. Rev. Code § 25.15.038 (2018).

¶53 Furthermore, we could identify no provision of Wisconsin's LLC Act that specifically displaces all of the common law claims asserted by Marx and Murray. The Act does not state or imply that Wis. Stat. § 183.0402 constitutes the entirety of an LLC member's or manager's obligations to other

27

members and to the LLC. Therefore, Marx and Murray's common law claims survive at this stage of the proceedings.

### E. Summary Judgment

¶54 Having determined that Marx and Murray have standing to assert individual claims against Morris and his LLC, and that Marx and Murray's common law claims are not preempted by the LLC Act, we next review whether Morris is entitled to summary judgment, which the circuit court denied. Summary judgment is not appropriate unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Dufour, 370 Wis. 2d 313, ¶12; Wis. Stat. § 802.08(2).

¶55 In this case, there is a genuine issue of material fact as to whether Morris violated Wis. Stat. § 183.0402(1) by a willful failure to deal fairly with Marx, Murray and/or North Star in connection with a matter in which he had a material conflict of interest. Marx and Murray's § 183.0402(1) claim is partly based on the Notice provision in North Star's Operating Agreement. Section 5.7 of the Operating Agreement states:

> d. Notice. No matter shall be voted upon at a meeting of Members unless at least 5 days' notice of the matter to be voted on is given or such notice is waived by any Member who is entitled to vote and who has not received notice. A Member shall be deemed to have waived notice of any matter acted upon at any meeting that the Member attends or in which the Member participates unless at the beginning of the meeting or promptly upon commencement of the Member's

28

participation in the meeting the Member objects to the consideration of the matter because of lack of proper notice. No prior notice shall be required for any action taken by written consent of the Members.

¶56 Marx and Murray assert that at the December 31, 2013 meeting,[31] Morris forced members to vote on selling Westar to DSJ without providing the notice required by section 5.7(d) of the North Star Operating Agreement. Among other things, they allege that Morris unfairly influenced the vote by failing to give the required notice and by falsely telling all the members of North Star that they would be able to become members of DSJ, and that his wrongful actions significantly increased his profit from the sale to Unimin to the detriment of Marx and Murray. Marx and Murray have raised a genuine issue of material fact as to whether Morris willfully failed to deal fairly with them in violation of Wis. Stat. § 183.0402(1).

¶57 With regard to the common law claims, the case has not been sufficiently developed for this court to determine whether there exist genuine disputes as to material facts for these claims. In its order denying Morris's motion for summary judgment, the circuit court addressed only the Wis. Stat. § 183.0402(1) claim, choosing to "wait until the conclusion of the evidence to determine if there are sufficient facts to enable a jury to make findings of fact with respect to [the

---

[31] It is not entirely clear from the record whether this was actually a members' meeting, at which all six members would be entitled to vote, or a Directors' meeting, at which only the Directors (the members minus Marx) would be entitled to vote.

29

common law claims]." On remand, the circuit court will decide whether a genuine dispute exists as to any material facts regarding Marx and Murray's common law claims, with the clarification that § 183.0402 does not eliminate them at this time.

¶58 Morris advances a number of arguments asserting that there is no genuine dispute as to any material fact. He argues that the North Star Operating Agreement permits the self-dealing alleged by Marx and Murray, that Marx and Murray released their claims by signing a "Member Distribution Receipt and Acknowledgements" as part of the Badger Silica transaction, and that the majority of North Star's disinterested members approved the Westar sale. For the reasons discussed below, Morris's arguments fail.

### 1. Business Opportunities Clause

¶59 Morris asserts that as a matter of law, the "Business Opportunities" clause in North Star's Operating Agreement abrogates Marx and Murray's Wis. Stat. § 183.0402(1) claims against him. The Operating Agreement states in relevant part:

Section 5.8. Wis. 2d Business Opportunities

. . . .

Nothing in this Agreement shall be deemed to prohibit any Director, or the Members or their respective officers, board of directors, directors, shareholders, partners, and affiliates, from dealing or otherwise engaging in business with Persons transacting business with the Company. Neither the Company, any Director, or any Member shall have any right by virtue of this Agreement, or the relationship created by this Agreement, in or to such other ventures or activities,

30

or to the income or proceeds derived from such other ventures or activities, and the pursuit of such ventures shall not be deemed wrongful or improper.

¶60 Wisconsin Stat. § 183.0402, on the other hand, states that unless otherwise provided in the LLC's operating agreement:

(1) No member or manager shall act or fail to act in a manner that constitutes any of the following:

(a) A willful failure to deal fairly with the limited liability company or its members in connection with a matter in which the member or manager has a material conflict of interest.

. . . .

(c) A transaction from which the member or manager derived an improper personal profit.

These are default statutory terms that can be altered by an operating agreement if an LLC's members so choose. As mentioned earlier, however, the default statutory terms govern unless the operating agreement unambiguously states otherwise. Lenticular, 279 Wis. 2d 385, ¶18.

¶61 North Star's Operating Agreement does not unambiguously supplant Wis. Stat. § 183.0402(1). The "Business Opportunities" provision in the Operating Agreement merely allows North Star's members and managers to engage in business with persons transacting business with North Star. It does not allow them to do so "unfairly" in contravention of § 183.0402(1)(a). Furthermore, Section 5.10(c) of the Operating Agreement expresses the members' expectation that other members or managers (Directors) of North Star will not willfully fail to deal fairly with the LLC in a matter in which the member or manager has a material conflict of interest, violate criminal

31

law, derive improper personal benefits, or engage in willful misconduct.[32]

¶62 The "Business Opportunities" clause is therefore entirely consistent with Wis. Stat. § 183.0402. North Star's members are free to engage in business with persons transacting business with North Star, LLC, provided that they do so fairly. The claim in this case is that Morris did so unfairly. We therefore conclude that the North Star Operating Agreement does not prevent Marx and Murray from asserting their claims against Morris.

## 2. Release

¶63 Morris next asserts that as a matter of law, the "Member Distribution Receipt and Acknowledgements" signed by Marx and Murray after the Badger Silica transaction constitutes a release of all their claims against Morris. "A release is to be treated as a contract." Gielow v. Napiorkowski, 2003 WI App 249, ¶14, 268 Wis. 2d 673, 673 N.W.2d 351. "Releases should be construed to give effect to the intention of the parties." Brandner v. Allstate Ins. Co., 181 Wis. 2d 1058, 1078, 512 N.W.2d 753 (1994). However, "subjective intent is not the be-all and end-all" of contract interpretation. Tufail v. Midwest Hosp., LLC, 2013 WI 62, ¶25, 348 Wis. 2d 631, 833 N.W.2d 586.

---

[32] Section 5.10(c) of the Operating Agreement tracks the duties of LLC members laid out in Wis. Stat. § 183.0402(1)(a)—(d), and provides that North Star has no obligation to indemnify a member or manager for liability incurred by a member or manager as a result of a violation of these duties.

Rather, we interpret the plain language of a contract "consistent with what a reasonable person would understand the words to mean under the circumstances." Maryland Arms Ltd. P'ship v. Connell, 2010 WI 64, ¶22, 326 Wis. 2d 300, 786 N.W.2d 15.

¶64 Under the circumstances of this case, a reasonable person would understand the scope of the "Member Distribution Acknowledgement and Release" to be limited to the Badger Silica transaction. The document memorializes the amount of money each member received as a result of the transaction, and accordingly is titled "Member Distribution Receipt and Acknowledgement" rather than "Release." It does not state that any member releases or waives any identified claims against any other member, nor does it memorialize any consideration for such a release. It was executed as part of the Badger Silica transaction in August 2014, a separate transaction that occurred months after the Westar/Pine Creek transaction, and makes no mention of Pine Creek or Westar. We conclude that the scope of the "Member Distribution Acknowledgement and Release" is limited to the North Star/Badger Silica transaction.

3. Majority Vote of Disinterested Members

¶65 Finally, Morris argues that he is entitled to judgment as a matter of law because a majority of disinterested North Star members voted to authorize the sale of Westar to DSJ. He argues that Wis. Stat. § 183.0402(2) requires him to hold as trustee for the LLC only those improper personal profits derived without the consent of a majority of disinterested members, and

that the Westar sale to DSJ was authorized by a majority of disinterested members.

¶66 Morris's argument is unpersuasive. As mentioned earlier, Wis. Stat. § 183.0402(2) does not limit the scope of Morris's duties to his fellow North Star members under § 183.0402(1). Section 183.0402(2) merely tells Morris what he must do if he derives an improper personal profit without the consent of a majority of disinterested members. It does not state that a violation of § 183.0402(1)(a) is excused so long as a majority of disinterested members consent to the unfair treatment of another member. Therefore, even if a majority of disinterested members were to have voted to approve the sale of Westar to DSJ, this would not affect Marx and Murray's § 183.0402(1)(a) claim against Morris. For the foregoing reasons, there are genuine issues of material fact regarding Marx and Murray's § 183.0402(1) claims against Morris. We affirm the circuit court's denial of Morris's motion for summary judgment.

## III. CONCLUSION

¶67 We conclude the following. First, the members of an LLC have standing to assert individual claims against other members and managers of the LLC based on harm to the members or harm to the LLC. Corporate principles of derivative standing do not apply to the distinct business form of an LLC.

¶68 Second, Marx and Murray's common law claims survive because they have not been displaced by particular provisions of ch. 183 or by North Star's Operating Agreement. Third, there

34

are genuine issues of material fact with regard to Marx and Murray's claim that Morris violated Wis. Stat. § 183.0402(1), and potentially with regard to the common law claims. For these reasons, we affirm the order of the circuit court and remand for further proceedings not inconsistent with this opinion.

*By the Court.*—Order of the circuit court is affirmed, and the cause is remanded.

¶69 DANIEL KELLY, J. *(concurring in part, dissenting in part).* Our decision today is incompatible with the structure of limited liability companies and the laws that govern them. Because the court's opinion establishes the following six erroneous propositions, I cannot join it:

1. A non-member may sue an LLC's members based on the LLC's management decisions.

2. A non-member may sue another non-member based on an LLC's management decisions.

3. A member of an LLC may sue a non-member for the LLC's management decisions.

4. One LLC member may pursue a claim against another LLC member (or a member of the member) without regard to whether the plaintiff actually owns the claim.

5. Members of an LLC owe each other fiduciary duties.

6. An attorney owes fiduciary duties not just to the organization it represents, but also to the constituent members of that organization.

## I. BUSINESS FORMS MATTER

¶70 The first four errors share a common feature: A failure to recognize that the distinction between an LLC and its members necessarily affects who may bring what types of actions against which defendants. The court's opinion properly identified the legal nature of North Star Sand, LLC ("North Star"), and accurately identified its membership (at least at one point), but it thereafter ignored the distinction between an LLC and its members in considering the rights and obligations of the parties to this action.

1

A.  LLCs and Members are Legally Distinct From Each Other

¶71  The distinction between LLCs and their members, of course, is why this case is here, so that's where I'll start. North Star is an LLC.  It has six members, each one of which is itself an LLC.  Majority op., ¶7.  Each of the six LLC members has a single member, and in each case that member is a natural person.  Two of the LLC members are plaintiffs in this case—Fracsand, LLC ("Fracsand"), and R&R Management Funds, LLC ("Management Funds"); one of the LLC members is a defendant—R.L. Co., LLC ("R.L.").  There are also three individuals who are parties to this case, none of whom are members of North Star.  Daniel Marx (Fracsand's sole member) and Michael Murray (Management Funds' sole member) are both plaintiffs.  Richard Morris (R.L.'s sole member) is a defendant.

¶72  The plaintiffs—all four of them—asserted five substantive causes of action in this case.[1]  That is to say, the plaintiffs are not just the North Star members.  The members' members are also plaintiffs.  And the plaintiffs sued not just a North Star member, but also that member's member.  In four of the five causes of action, Messrs. Marx and Murray claimed that one of North Star's members (R.L.) owed them legally enforceable duties by virtue of R.L.'s membership in North Star.  And in all

---

[1] The plaintiffs alleged the following against Mr. Morris and R.L. Co., LLC in their amended complaint:  (1) violation of Wis. Stat. § 183.0402; (2) breach of fiduciary duties between LLC members; (3) breach of fiduciary duties as corporate counsel; (4) unjust enrichment; and (5) breach of implied covenant of good faith and fair dealing.

five causes of action they claimed that North Star's member's member (Mr. Morris) owed them legally enforceable duties. But neither Mr. Marx, nor Mr. Murray, nor Mr. Morris, are North Star members. The court failed to account for this foundational fact, and that sent its analysis on an unrecoverable trajectory.

¶73 The court's error started in the very first paragraph, in which it misapprehended the identity of the parties to this case:

> Two members of a limited liability company (LLC), Fracsand, LLC by Daniel Marx (Marx) and Management Funds, LLC by Michael Murray (Murray), brought an action against another member, Richard Morris (Morris) and his LLC, R.L. Co., LLC, after North Star Sand, LLC (North Star) sold valuable assets to a company owned by Morris.

Id., ¶1. No, Fracsand did not bring its claim "by Daniel Marx," nor did Management Funds bring its claim "by Michael Murray." Fracsand and Management Funds brought their claims under their own steam, because each one is a juridical entity with the ability to sue and be sued:

> (2) Unless otherwise provided in an operating agreement, a limited liability company organized and existing under this chapter has the same powers as an individual to do all things necessary and convenient to carry out its business, including but not limited to all of the following:
>
> (a) Sue and be sued, complain and defend in its name.

Wis. Stat. § 183.0106(2)(a). Nothing in the amended complaint suggests that Messrs. Marx and Murray are participating in this case simply as proxies for Fracsand and Management Funds. To the contrary, Messrs. Marx and Murray asserted their own claims against the defendants. The complaint explicitly states there

3

are four plaintiffs, not two: Mr. Marx, Fracsand, Mr. Murray, and Management Funds. Nonetheless, the court reduced them by half, referring to Mr. Marx and Fracsand as "Marx," and Mr. Murray and Management Funds as "Murray" throughout the opinion as though there is no legal difference between an LLC and its members. The court didn't fare much better with the defendants. It said the plaintiffs "brought an action against another member, Richard Morris (Morris) and his LLC, R.L. Co., LLC." Majority op., ¶1. That would certainly be news to the plaintiffs (all four of them), because they all understand that R.L. is the North Star member, not Mr. Morris. The apparent assumption behind the court's conflation of the LLCs involved in this case and their members is that our statutes make no distinction between them. But that's simply not true. In fact, the distinction between LLCs and their members is the very first thing for which we must account in deciding who may bring what types of claims against which defendants.

¶74 The first step in analyzing this case is determining who owns the causes of action asserted in the amended complaint. As a juridical entity, an LLC can buy, hold, and convey property in its own name. Wis. Stat. § 183.0701(3) ("Property may be acquired, held and conveyed in the name of a limited liability company."). Causes of action are a type of property recognized by Wisconsin law. Wis. Stat. § 990.01(27) (Personal property "includes . . . things in action[.]"); Logan v. Zimmerman Brush Co., 455 U.S. 422, 428 (1982) (citing Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306 (1950) ("[A] cause of action is a

4

species of property protected by the Fourteenth Amendment's Due Process Clause.")).  Therefore, because LLCs have "the same powers as an individual to do all things necessary and convenient to carry out its business,"[2] and because they can own property as well as sue and be sued, it necessarily follows that they can own a cause of action just like an individual.

¶75 Ownership of a cause of action depends on the principle of "standing."  A person has standing, and therefore owns a cause of action, only if he has been injured (or threatened with injury):  "For standing to exist two things must be shown.  First, there must be some direct injury or a threat of direct injury.  Second, the injury must be to a legally protected interest."  Fox v. Wisconsin DHSS., 112 Wis. 2d 514, 529, 334 N.W.2d 532 (1983); Liebovich v. Minnesota Ins. Co., 2008 WI 75, ¶36, 310 Wis. 2d 751, 751 N.W.2d 764 ("[I]t is through the demonstration of injury that standing is conferred."); Krier v. Vilione, 2009 WI 45, ¶20, 317 Wis. 2d 288, 766 N.W.2d 517 ("'Standing' is a concept that restricts access to judicial remedy to those who have suffered some injury because of something that someone else has either done or not done.") (quoted source omitted).

¶76 We are not unfamiliar with the challenge of distinguishing between causes of action that belong to a business entity and those that belong to the entities' owners. We employ the "primary injury" rule to help us accurately

---

[2] Wis. Stat. § 183.0106(2).

5

determine ownership. Although the rule has its genesis in the corporate context, it is not a product of Chapter 180. It is, instead, a judicially-created analytical construct that exists for the express purpose of accounting for the fact that a corporation and its shareholders are legally distinct——a distinction that necessarily affects who or what owns a particular claim. And because LLCs and members are legally distinct in the same way as corporations and their shareholders, we will inevitably face the same question when encountering a claim related in some way to the LLC or the business it conducts: Does the claim belong to the LLC, or to its individual members? Because both corporations and LLCs are juridical entities, and both are statutorily-enabled to own causes of action, and ownership of both types of business entities is distinct from the company itself, the answer must necessarily be the same in the LLC context as in the corporate context. Consequently, the "primary injury" rule is as useful here as when we determine the ownership of claims related to corporations.

¶77 The "primary injury" rule is simple and intuitive. It begins with this inquiry: "Whose right is sought to be enforced by the [] cause of action?" Rose v. Schantz, 56 Wis. 2d 222, 229, 201 N.W.2d 593 (1972). The cause of action belongs to the company's owner, as opposed to the company itself, if the injury is "'primarily . . . to an individual shareholder [or member] . . . .'" Notz v. Everett Smith Grp., Ltd., 2009 WI 30, ¶23, 316 Wis. 2d 640, 764 N.W.2d 904 (quoted source omitted).

6

And the injury is primarily to the individual if it "'affects a shareholder's [or member's] rights in a manner distinct from the effect upon other shareholders [or members] . . . .'" Id. If the individual's injury is not distinct from the other owners, then the injury is to the company and the company owns the cause of action.[3]

¶78 The court refuses to engage this analysis because it believes our statutes allow LLCs and their members to pursue causes of action without accounting for their ownership. The court claims that "the only provision of ch. 183 relating to suits in the name of an LLC is Wis. Stat. § 183.1101," an unfortunately inaccurate statement——but more about that later. Majority op., ¶39. It asserts that "§ 183.1101 does not require that claims against LLC members be brought in the name of the LLC," and that this provision "is silent on a member's right to sue on his own behalf . . . ." Id., ¶40. Based on these premises, the court said "[W]e will not judicially import ch. 180's corporate derivative standing provisions into the LLC context where the legislature has not done so." Id., ¶41.

¶79 There's no need to judicially import derivative standing principles into Chapter 183, because the legislature

---

[3] This not to say, however, that one act could not simultaneously give rise to one type of injury that falls primarily on the company and another that falls primarily on the member. See, e.g., Marshfield Clinic v. Doege, 269 Wis. 519, 527, 69 N.W.2d 558 (1955) ("If wrongful acts are not only wrongs against a corporation, but also violations by the wrongdoer of a duty arising from contract and owing directly by him to the stockholders, then the stockholders may sue on their own behalf.").

has, in fact, already done so. The court's analysis is faulty because it didn't start at the beginning. The first statutory provision to consult on this subject is not Wis. Stat. § 183.1101 (which is where the court started), it is § 183.0305. Here we learn that one's status as a member of an LLC does not, by itself, provide the necessary authority to sue on behalf of the LLC:

> A member of a limited liability company is not a proper party to a proceeding by or against a limited liability company, solely by reason of being a member of the limited liability company, except if any of the following situations exists:
>
> (1) The object of the proceeding is to enforce a member's right against or liability to the limited liability company.
>
> (2) The action is brought by the member under s. 183.1101.

§ 183.0305. In the first enumerated situation (which is not at issue here), one's status as a member is sufficient for the member to bring an action against the LLC, or for the LLC to bring an action against the member. The only other circumstance in which membership in an LLC confers authority to sue (according to § 183.0305) is through compliance with § 183.1101. That provision says:

> Unless otherwise provided in an operating agreement, an action on behalf of a limited liability company may be brought in the name of the limited liability company by one or more members of the limited liability company, whether or not the management of the limited liability company is vested in one or more managers, if the members are authorized to sue by the affirmative vote as described in s. 183.0404 (1) (a), except that the vote of any member who has an interest in the outcome of the action that is adverse to the

8

interest of the limited liability company shall be excluded.

§ 183.1101(1). Consequently, § 183.0305 stands as a bar against members suing on behalf of their LLC unless they satisfy the terms of § 183.1101.

¶80 The primary reason the court's statutory analysis went where it did is because it never mentioned, much less analyzed, Wis. Stat. § 183.0305. Its narrow focus on the terms of § 183.1101, to the exclusion of all other statutory provisions, caused it to conclude that its provisions were optional, and that it "is silent on a member's right to sue on his own behalf . . . ." Majority op., ¶40. Yes, § 183.1101 is silent on that subject. The problem is, § 183.0305 is not. In fact, § 183.1101 simply operates as an exception to the rule in § 183.0305 that a member has no standing to sue on behalf of his LLC.

B. Of Taxation, Profits, and Derivative Actions

¶81 The court rejected derivative standing, in part, because of what it sees as differential treatment of LLCs and corporations in matters of taxation and distribution of profits. So, for example, the court said:

> [I]n a corporation, gains and losses do not flow through to the individual shareholders. Instead, the corporation's income is first taxed at the entity level. . . . In contrast, North Star has elected to be taxed as a partnership. This is the usual form of operation for an LLC. When treated as a partnership, the company's gains and losses flow through to individual members and are realized directly by each member, each year, on that member's individual tax return.

Majority op., ¶¶44-45 (citations omitted).

9

¶82 That's all true . . . except for when it's not. An LLC may choose to be taxed at either the entity or member level. 26 CFR § 301.7701-3. Similarly (and subject to some limitations), a corporation may also choose to be taxed either at the entity or shareholder level. 26 U.S.C. § 1361 (describing the requirements by which a corporation can elect to be taxed similarly to a partnership).[4] The default rules, of course, are different: By default, a corporation is taxed at the entity level while an LLC is taxed at the individual level. They have to elect to be treated differently. But the court never explained how this seemingly trivial distinction could affect the ownership of a cause of action.

¶83 The court also found it significant that "[a] member's interest in [the LLC] is that member's personal property, and includes the right to a share of the profits and losses of the LLC." Majority op., ¶45. So? The same could be said of a shareholder's interest in a corporation. And, in fact, we have: "There is plenty of authority for the proposition that shares of stock in a corporation are personal property[.]" Stone v. State Tax Comm'n, 197 Wis. 71, 73-74, 221 N.W. 376 (1928); Shepard v. State, 184 Wis. 88, 91, 197 N.W. 344 (1924) ("There is a fundamental difference between the capital of a corporation and its capital stock. The former belongs to the corporation; the latter, when issued, to the stockholders. The former may be either real or personal property; the latter, when issued, is

---

[4] Even the court recognizes this. See Majority op., ¶31 n.20.

10

always personal property." (Emphasis added.)). We have also said so with respect to the right to share in profits: "[A]cting shareholders have a right to dividends paid on a pro rata basis equivalent to their ownership of corporate stock." Krier, 317 Wis. 2d 288, ¶31, n.13.; see also Franzen v. Fred Rueping Leather Co., 255 Wis. 265, 273-74, 38 N.W.2d 517 (1949) ("It is well established that as soon as a dividend is lawfully and fully declared out of surplus profits the corporation becomes indebted from that moment to each stockholder for the amount of his share, and the stockholder may recover it in an action against the corporation.").

¶84 These tax and profit-distribution issues are important, the court said, because they demonstrate "there is generally a much closer financial connection between harm to an LLC and harm to its members than between harm to a corporation and harm to its shareholders." Majority op., ¶45. And it concludes that failing to recognize this "demonstrates a lack of understanding of basic principles that control North Star, LLC." Id., ¶34. But that is not true at all. The tax treatment of both corporations and LLCs is largely a matter of choice, not a distinction based on the statutory chapter under which they were organized. The minor differences related to profit distribution when LLCs and corporations choose the same tax treatment have precisely zero impact on the "financial connection between harm" to the company and its owners. Contrary to the court's assertion, therefore, the manner in which a member experiences harm to his LLC is not cognizably different from the manner in

11

which a shareholder experiences harm to his corporation, so long as they make the same tax election. Any potential difference——either with respect to a corporation or an LLC——is purely elective. That is to say, the difference has nothing to do with what the statutes say about the structural and juridical form of an LLC, which is all that should interest us in determining whether it owns its own causes of action.

¶85 To the extent the court suggests that North Star's tax election is relevant to the ownership of a cause of action, what will it say of LLCs that choose taxation at the entity level? Will it say we recognize an LLC's ownership of a cause of action when it chooses taxation at the entity level, but not when it chooses taxation at the member level? Or will the court apply today's rule to LLCs taxed at the entity level simply because the question was first posed by an LLC taxed at the member level? The court won't address these questions because it thinks they are irrelevant: "Although we could describe many interesting hypotheticals about the financial choices that LLCs may elect, we choose not to do so because such hypotheticals have absolutely no relevance to the case before us." Id., ¶33. Actually, they do. The principles the court enunciates today will not control North Star alone; they will control all Wisconsin LLCs. The court created its claim-ownership rule based on North Star's tax election, but its rule makes no allowance for LLCs that choose taxation at the entity level. The failure to account for that distinction reveals the logical error lying at the heart of the court's analysis: If North Star

12

does not own its cause of action because it chose taxation at the member level, but LLCs choosing taxation at the entity level don't own their causes of action either, then the tax election cannot really be the controlling factor, can it?

¶86 It is apparent that these tax and profit-distribution matters are supposed to suggest that the distinction between an LLC and its members is so blurry that we should treat the ownership of a claim as indifferently belonging to the LLC or its members. That, however, creates immediate, real-life problems. If the distinction between the LLC and its members really is so permeable and amorphous, who owns the recovery if plaintiffs are successful? The plaintiffs say they were injured because DSJ didn't give full value for its purchase of Westar. Presumably, the delta between fair value and the actual purchase price would be the measure of recovery. But who gets it? If we don't distinguish between claims belonging to LLCs and those belonging to their members, then as a matter of logic the plaintiffs would receive the whole recovery. That is to say, just two of the six members would split amongst themselves 100% of the diminution of North Star's value. That seems odd.

¶87 It also seems odd that we would allow the plaintiffs to litigate the claims they asserted in this case without joining North Star as a party, or North Star's other members. What if North Star's management is interested in ratifying the transaction with DSJ? And shouldn't it have a say in how the lawsuit proceeds? Our statutes say they should. That's why a

13

member cannot bring a derivative action without a majority vote of disinterested members:

> [A]n action on behalf of a limited liability company may be brought in the name of the limited liability company by one or more members of the limited liability company . . . if the members are authorized to sue by the affirmative vote as described in s. 183.0404 (1) (a), except that the vote of any member who has an interest in the outcome of the action that is adverse to the interest of the limited liability company shall be excluded.

Wis. Stat. § 183.1101(1). But by blurring the distinction between an LLC and its members as much as it has, the court has eliminated the LLC's ability to control litigation brought to remedy, ostensibly, injury to the LLC itself. Under the court's new paradigm, a cause of action belongs to the first person to grab it, without regard to whether the primary injury fell on him as opposed to the LLC. All without input from any other member or the LLC itself.

¶88 Neither taxation nor profit-distribution issues distinguish LLCs from corporations in any sense relevant to this case. Certainly not in a sense that would warrant line-blurring between LLCs and their members to the extent we can ignore traditional concepts of standing with respect to juridical entities and their owners. I agree with the court's observation that the LLC structure allows for "informality and flexibility of organization and operation,"[5] but what it has created here is not that. It is the chaotic unruliness of the wild west.

\*

---

[5] Majority op., ¶23.

14

¶89 So, notwithstanding the court's assertions, Chapter 183 does recognize a distinction between an LLC's and a member's ownership of a claim. That's the whole point of controlling whether a member, qua member, may sue on behalf of his LLC. When a member may do so, we refer to that authority as "derivative standing." Therefore, the court erred when it refused to inquire into who owns which claims out of a fear it would be judicially importing the derivative standing concept. The concept is already there, and not by our hand.

## II. OWNERSHIP OF THE CLAIMS

¶90 The failure to recognize that Chapter 183 necessarily incorporates the concept of derivative standing caused the court to assess the plaintiffs' claims without reference to which of them, if any, had authority to prosecute them. And that led directly to the first four erroneous propositions listed at the beginning of this opinion. If our analysis had begun with the proper starting point, it would have looked something like the following.

### A. Violation of Wis. Stat. § 183.0402(1)

¶91 Count I of the amended complaint claims that Mr. Morris and R.L. violated the obligations imposed on them by Wis. Stat. § 183.0402. That statute says, in relevant part:

Unless otherwise provided in an operating agreement:

(1) No member or manager shall act or fail to act in a manner that constitutes any of the following:

(a) A willful failure to deal fairly with the limited liability company or its members in connection with a matter in which the member or manager has a material conflict of interest.

15

Id. The plaintiffs say the violation occurred when R.L. and Mr. Morris influenced North Star to sell Westar Proppants, LLC ("Westar")——a wholly-owned subsidiary of North Star——to DSJ Holdings, LLC ("DSJ"), an entity owned by Mr. Morris. Specifically, they say Mr. Morris had a material conflict of interest in the sale of Westar to DSJ, and that the decision to sell was the consequence of a vote that was not preceded by the notice requirements of North Star's Operating Agreement.

¶92 By its explicit terms, Wis. Stat. § 183.0402 describes a potential injury to the LLC or its members. That automatically disqualifies Messrs. Marx and Murray from bringing this claim, because they are not members of North Star. So the only potentially eligible plaintiffs are Fracsand and Management Funds. A proper analysis would next apply the primary injury rule to determine whether the claim belongs to North Star or, instead, the plaintiff LLCs.

¶93 There are three potential violations described by Count I. The first is diminution of North Star's value following its sale of Westar to someone who had a material conflict of interest in the transaction. The plaintiffs say that, because of the conflict of interest, Northstar sold Westar for inadequate consideration. If that is so, then Fracsand and Management Funds certainly suffered injury from that transaction, but not in a manner that affects their "rights in a manner distinct from the effect upon other" members' rights. Notz, 316 Wis. 2d 640, ¶23 (quoted source omitted). Diminution of a company's value, and hence its value to the company's

16

owner, describes a classic derivative injury: "That such primary and direct injury to a corporation may have a subsequent impact on the value of the stockholders' shares is clear, but that is not enough to create a right to bring a direct, rather than derivative, action." Rose, 56 Wis. 2d at 229.

¶94 Further, our statutes treat any recovery upon such a claim in a way that unmistakably identifies this as a claim belonging to North Star. If Fracsand and Management Funds were to succeed in their claim, Wis. Stat. § 183.0402 requires the defendant to "hold as trustee" for the "limited liability company . . . any improper personal profit derived by that member or manager . . . from any . . . transaction connected with the organization[.]" § 183.0402(2)(a). So the improper profits, if there are any, belong to North Star, not its members. Therefore, when we ask "[w]hose right is sought to be enforced by the [] cause of action[,]" Rose, 56 Wis. 2d at 229, the answer must necessarily be North Star because the malefactor must hold the improper profit in trust for the LLC. Consequently, Fracsand and Management Funds must pursue North Star's claim in accordance with the procedures described in Wis. Stat. §§ 183.0305 and 183.1101, or not at all. Because they did not, they may not seek recovery for this alleged injury.

¶95 The second potential violation described by Count I is the failure to give proper notice prior to the vote to sell

17

Westar to DSJ.[6]  We have recognized that improper management can injure an entity's owner in a way that confers standing to bring a direct action.  Rose, 56 Wis. 2d at 228-29 ("Thus, where some individual right of a stockholder is being impaired by the improper acts of a director, the stockholder can bring a direct suit [against the director] on his own behalf because it is his individual right that is being violated."); see also Ewer v. Lake Arrowhead Ass'n, Inc., 2012 WI APP 64, ¶37, 342 Wis. 2d 194, 817 N.W.2d 465 ("If the plaintiffs' voting rights have been violated, the plaintiffs——not the corporation——have suffered a harm.") (internal citation omitted).  However, although this violation could support a direct cause of action, it does not necessarily follow that it supports the recovery Fracsand and Management Funds want.  The recoverable injury must be one suffered by these plaintiffs in some manner not experienced by all other members.  The complaint describes no such injury.  In fact, the complaint describes no injury at all consequent upon not receiving the pre-vote notice required by the North Star Operating Agreement.  The only deleterious consequence described in the complaint was the sale of Westar to DSJ.  However, as the analysis above demonstrates, the North Star members experienced that consequence all alike, and so that

---

[6] The operating agreement provides:  "No matter shall be voted upon at a meeting of the Directors unless at least 24 hours' notice of the matter to be voted on is given or such notice is waived by any Director not receiving it."  Here, the vote for the sale of Westar to DSJ occurred without the directors having proper notice.

18

injury can give rise to a cause of action belonging only to North Star, not its members.

¶96 The final possible violation described by Count I is Mr. Morris and R.L.'s refusal to allow the plaintiffs to join DSJ. But the obligations described by Wis. Stat. § 183.0402 obtain only between members and managers of the same LLC. It has nothing to say about the conduct between members of different LLCs. The decision on who to admit as a DSJ member belongs to DSJ, and the plaintiffs are complete strangers to that LLC. Therefore, there is only one possible claim described in Count I that Fracsand and Management Funds could pursue as a direct action under § 183.0402: The failure to receive the required pre-vote notice. However, the complaint does not disclose any injury from that violation recoverable by Fracsand and Management Funds. That is not to say there cannot be any, but it might be just a peppercorn. The recovery certainly cannot be based on the allegedly inadequate consideration received by North Star for the sale of Westar to DSJ. That is an injury to North Star, not Fracsand and Management Funds, and so any cause of action to remedy that injury would necessarily belong to North Star.

## B. Unjust Enrichment

¶97 Count IV of the amended complaint alleges that R.L. and DSJ were unjustly enriched when North Star sold Westar to DSJ. As above, we must ask "[w]hose right is sought to be enforced by the [] cause of action?" Rose, 56 Wis. 2d at 229. If the enrichment was unjust, then it was an unjustness suffered

19

in like kind by all of North Star's members. Any recovery from the successful assertion of such a cause of action would necessarily go to North Star, not Fracsand or Management Funds. To do otherwise would unjustly enrich those two at the expense of all other North Star members. So Fracsand and Management Funds must bring this action according to the terms of Wis. Stat. § 183.1101 or not at all. They did not do so, and so they have no standing to pursue the claim.

### C. Breach of Implied Covenant of Good Faith and Fair Dealing

¶98 In Count V, plaintiffs say the North Star operating agreement implies, by operation of law, the covenant of good faith and fair dealing. But once again, the injury they assert is the sale of Westar to DSJ for inadequate consideration. This is no different from the injury asserted in the causes of action addressed above, so if it is a good claim, it belongs to North Star, not Fracsand or Management Funds.

### III. BREACH OF FIDUCIARY DUTIES

¶99 The court's fifth erroneous proposition (as listed at the beginning of this opinion) is that fiduciary duties obtain between members of an LLC. They don't. Nonetheless, that is the premise of the plaintiffs' claim in Count II of their complaint.

¶100 As a preliminary matter, we can easily conclude that Messrs. Marx and Murray have no authority to pursue this claim. Neither one is a North Star member, and so it is not possible for intra-membership fiduciary duties (should there be any) to have anything to say about how non-members are treated.

20

Similarly, we can eliminate Mr. Morris as a proper defendant with respect to this cause of action because he is not a member of North Star either. If this cause of action exists, therefore, it can obtain only between Fracsand, Management Funds, and R.L.

¶101 The court reached the conclusion that LLC members owe each other fiduciary duties in a distinctly sideways fashion. Instead of asking whether there is anything about the relationship between LLC members that would call a fiduciary duty into existence, it asked whether the creation of Chapter 183 displaced pre-existing common-law claims. It concluded it did not: "In this case, the claim[] asserted by Marx and Murray, breach of fiduciary duty, . . . are not displaced by ch. 183 based on the record before us." Majority op., ¶47. That's true, but tautological. Consequently, it has no explanatory or instructive power at all.

¶102 If Chapter 183 has any "displacing" power, it can only be because——at a minimum——there existed something capable of being displaced. Here, that is not even conceptually possible. Chapter 183 cannot displace any pre-existing fiduciary duties between members of an LLC because, prior to adoption of that chapter, there was no such thing as an LLC member. And because there was no such thing as an LLC member, it is necessarily true that no one was relating to anyone else as one LLC member relates to another. Therefore, if LLC members relate to each other as fiduciaries, it can only be because one of two propositions is true. The first is that Chapter 183, by its own

21

terms, created fiduciary duties between members. The second is that the very nature of the relationship between LLC members gives rise to fiduciary obligations. In neither event is Chapter 183 capable of displacing anything because the legislature was writing on a blank slate. We can rule out the first proposition easily enough——nothing in Chapter 183 refers to fiduciary duties between members. So the only question before us was whether the nature of the relationship between LLC members necessarily implies the existence of fiduciary obligations.

¶103 Common-law fiduciary duties arise out of the nature of the relationship between two or more parties.[7] These duties mitigate the risk of self-dealing by the other members within the circle of fiduciary duties, and lower the monitoring costs of their conduct. These principles extend back more than 3,000 years. Tamar Frankel, Fiduciary Duties 96-97 (2007). We have recognized that "[a] fiduciary relationship arises from a formal commitment to act for the benefit of another . . . or from special circumstances from which the law will assume an obligation to act for another's benefit. Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Boeck, 127 Wis. 2d 127, 136, 377 N.W.2d 605 (1985). Typically, the law will assume such an

---

[7] Unfortunately, Messrs. Marx and Murray's brief on the existence of this duty was not fully developed. Out of fifty-six pages they spent only two of them on this central question. The substance of their argument is: Partners have fiduciary duties to each other, so LLC members also have fiduciary duties to each other.

22

obligation where there is an "entrustment of power or property in connection with the fiduciary's services . . . ." Tamar Frankel, Fiduciary Duties as Default Rules, 74 Or. L. Rev. 1209, 1224 (1995). In "determining whether a fiduciary relationship has arisen, courts consider a variety of factors, including whether there is dependence and inequality . . . or other conditions giving one side an advantage over the other." See Hatleberg v. Norwest Bank Wisconsin, 2005 WI 109, ¶32, 283 Wis. 2d 234, 700 N.W.2d 15 (emphasis added).

¶104 These principles justify the imposition of fiduciary duties between, for example, members of a partnership. A partner can incur liabilities on behalf of other partners because (1) any partner can bind the partnership and (2) every partner is liable for all of the partnership's obligations. Wis. Stat. § 178.0306(1). Thus, in a partnership between "A" and "B," partner A depends on partner B to act in their combined best interest because if partner B chooses, he can incur liabilities for which partner A might ultimately be responsible. The relationship creates a "dependence" between the partners; the fiduciary duties between them ward against one partner taking advantage of the others.

¶105 If the members of an LLC stood in a position of "dependence and inequality" amongst themselves, that relationship would call into existence fiduciary duties between them. But LLC members do not relate to one another in the same way that partners do. Instead, the nature of the relationship between LLC members is much closer to that obtaining between

23

shareholders of a corporation. An LLC member cannot bind another member of the LLC any more than a shareholder can bind fellow shareholders. Wis. Stat. § 183.0301(1)(a) ("Each member is an agent of the limited liability company, but not of the other members or any of them, for the purpose of its business."). A shareholder cannot bind a fellow shareholder because all corporate authority belongs to the corporation's board of directors. Wis. Stat. §180.0801(2) ("All corporate powers shall be exercised by or under the authority of, and the business and affairs of the corporation managed under the direction of, its board of directors, subject to any limitation set forth in the articles of incorporation."). And because an LLC is a liability-limiting business entity, the obligations to which a member may bind an LLC do not reach the other members: "The debts, obligations and liabilities of a limited liability company, whether arising in contract, tort or otherwise, shall be <u>solely</u> the debts, obligations and liabilities of the <u>limited liability company</u>." § 183.0304(1) (emphasis added). The same is true of corporations and their shareholders: "Unless otherwise provided in the articles of incorporation, a shareholder of a corporation is not personally liable for the acts or debts of the corporation[.]" § 180.0622(2). So while it is conceivable that an LLC member may owe a fiduciary duty to the LLC, there is nothing about membership in an LLC that can call fiduciary duties into existence between its members. Chapter 183 does not create those duties, and because there is a lack of "dependence and inequality," <u>Hatleberg</u>, 283 Wis. 2d 234,

24

¶32, between LLC members, that relationship cannot make them fiduciaries.

## IV. FIDUCIARY DUTIES AS CORPORATE COUNSEL

¶106 The court's final erroneous proposition (as listed above) relates to the identify of an attorney's client. In Count III of the amended complaint, the plaintiffs claim that Mr. Morris's service as North Star's counsel imposed on him fiduciary obligations to North Star's members. Based on the same principles discussed above, Messrs. Marx and Murray may not pursue this claim because they are not members of North Star. But more fundamentally, there is no basis for this claim because an LLC's attorney has a fiduciary obligation to the LLC, not its members. One of the most fundamental principles of the attorney-client relationship is that it creates a fiduciary relationship. Law Examination of 1926, 191 Wis. 359, 362, 210 N.W. 710 (1926) ("An attorney occupies a fiduciary relationship towards his client.").[8] When an attorney does work for a corporation or an LLC, the attorney-client relationship is between the attorney and the organization, not its members: "A lawyer employed or retained by an organization represents the organization acting through its duly authorized constituents." SCR 20:1.13(a) (emphasis added). Mr. Morris, in his capacity as an attorney, owes a fiduciary duty to North Star, not Fracsand

---

[8] "There is no field of human activity which requires a fuller realization with respect to a fiduciary relationship than that which exists between the lawyer and his client." Law Examination of 1926, 191 Wis. 359, 362, 210 N.W. 710 (1926).

25

or Management Funds. Therefore, any breach of that duty injures North Star, which means the claim belongs to the LLC. Neither Fracsand nor Management Funds may assert that claim unless they comply with Wis. Stat. § 183.1101.

## V. CONCLUSION

¶107 Messrs. Marx and Murray have no standing to pursue any of the claims contained in their amended complaint. Fracsand and Management Funds, on the other hand, have a potential direct action against Mr. Morris (but not R.L.) based on the failure to provide the pre-vote notice required by North Star's Operating Agreement.[9] But if they succeed on that claim, the recovery can only be the injury they suffered distinctly from that of all other North Star members. That does not include any diminution in North Star's value because of the sale of Westar for allegedly insufficient consideration. With respect to fiduciary duties, we should have concluded that there is no fiduciary relationship amongst LLC members, and that an attorney owes fiduciary duties only to the LLC, not its members.

¶108 Because the court did not reach these conclusions, it affirmed the following six propositions, all of which are erroneous:

---

[9] The court remands this case for further proceedings. I concur with that conclusion, but only with respect to Management Funds and Fracsand's action against Mr. Morris (in his capacity as a North Star director) based on the failure to provide the required pre-vote notice. I dissent with respect to everything else.

26

1. Messrs. Marx and Murray, who are not North Star members, may nonetheless sue North Star's members for North Star's management decisions.

2. Messrs. Marx and Murray (who are not North Star members) may sue Mr. Morris (who is also not a North Star member) based on North Star's management decisions.

3. Fracsand and Management Funds may sue Mr. Morris (who is not a North Star member), in his personal capacity, for North Star's management decisions.

4. The plaintiffs may sue North Star's members based on causes of action that belong to North Star, not the plaintiffs.

5. North Star's members owe each other fiduciary duties even though the membership relationship contains none of the particulars that call fiduciary obligations into existence in other contexts.

6. Mr. Morris (as North Star's attorney) owes fiduciary duties not only to North Star, but its members and its members' members.

¶109 For these reasons, I concur in part and dissent in part.

¶110 I am authorized to state that Justices SHIRLEY S. ABRAHAMSON and REBECCA GRASSL BRADLEY join this opinion.

27