# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2019AP1200 |

| | |
|---|---|
| COMPLETE TITLE: | In re the marriage of:<br><br>Kathy Schwab, n/k/a Siech,<br>      Petitioner-Respondent-Petitioner,<br>   v.<br>Paul Schwab,<br>      Respondent-Appellant. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 392 Wis. 2d 660,946 N.W.2d 241
PDC No:2020 WI App 40 - Published

| | |
|---|---|
| OPINION FILED: | June 22, 2021 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | March 15, 2021 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Milwaukee |
| JUDGE: | Michael J. Dwyer |

JUSTICES:
DALLET, J., delivered the majority opinion of the Court, in which ANN WALSH BRADLEY, ROGGENSACK, and KAROFSKY, JJ., joined. ZIEGLER, C.J., filed a dissenting opinion, in which REBECCA GRASSL BRADLEY and HAGEDORN, JJ., joined. REBECCA GRASSL BRADLEY, J., filed a dissenting opinion.
NOT PARTICIPATING:

ATTORNEYS:

For the petitioner-respondent-petitioner, there were briefs filed by *Carlton D. Stansbury, Colin A. Drayton*, and *Burbach & Stansbury S.C.*, Milwaukee. Oral argument was presented by *Carlton D. Stansbury*.


For the respondent-appellant, there was a brief filed by *Andrew J. Laufers, Laura Stack,* and *Cordell Law, LLP.* Edina, Minnesota and Milwaukee. Oral argument was presented by *Andrew J. Laufers*.

NOTICE

This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.

No. 2019AP1200
(L.C. No. 1991FA915107)

STATE OF WISCONSIN : IN SUPREME COURT

In re the marriage of:

Kathy Schwab, n/k/a Siech,

    Petitioner-Respondent-Petitioner,

    v.

Paul Schwab,

    Respondent-Appellant.

**FILED**

**JUN 22, 2021**

Sheila T. Reiff
Clerk of Supreme Court

DALLET, J., delivered the majority opinion of the Court, in which ANN WALSH BRADLEY, ROGGENSACK, and KAROFSKY, JJ., joined. ZIEGLER, C.J., filed a dissenting opinion, in which REBECCA GRASSL BRADLEY and HAGEDORN, JJ., joined. REBECCA GRASSL BRADLEY, J., filed a dissenting opinion.

REVIEW of a decision of the Court of Appeals. *Reversed.*

¶1 REBECCA FRANK DALLET, J. Kathy Siech and Paul Schwab divorced in 1992. As part of the divorce judgment, the circuit court incorporated their marital settlement agreement, in which Paul promised to pay Kathy half of his pension "when and if" that benefit first became available to him. But when Paul first

received his pension nearly 21 years later, he refused to pay Kathy her share. Kathy sought to judicially enforce their agreement via a contempt order, to which Paul responded that her action was barred by a 20-year statute of repose, Wis. Stat. § 893.40 (2019-20).[1] The circuit court disagreed and concluded that, under Johnson v. Masters, 2013 WI 43, 347 Wis. 2d 238, 830 N.W.2d 647, it had the authority to order Paul to comply with the settlement agreement.[2] The court of appeals reversed that order, concluding that § 893.40 barred Kathy's action.[3] We agree with the circuit court that Johnson v. Masters is instructive. Accordingly, § 893.40 does not bar Kathy's action because it was impossible for Paul to perform on his promise—and therefore for Kathy to enforce that promise—until after the statutory period of repose had run. We therefore reverse the court of appeals' decision and reinstate the circuit court's order.

I

¶2 In February 1992, the circuit court granted Kathy and Paul, then both 39 years old, a divorce judgment. The judgment incorporated Kathy and Paul's marital settlement agreement, which detailed how they would divide their marital property and stated that the circuit court would retain "continuing

---

[1] All subsequent references to the Wisconsin Statutes are to the 2019-20 version unless otherwise indicated.

[2] The Honorable Michael J. Dwyer of the Milwaukee County Circuit Court presided.

[3] Schwab v. Schwab, 2020 WI App 40, 392 Wis. 2d 660, 946 N.W.2d 241.

2

jurisdiction . . . to make orders enforcing" that division. Under one provision, Paul agreed to provide Kathy half his Air National Guard pension "when and if" it became available to him.

¶3 Paul's pension first became available to him in February 2013 when he turned 60 years old, roughly 21 years after the divorce judgment was entered. Although he received regular pension disbursements, Paul never paid Kathy her share. In 2017, Kathy requested both her share of past payments and that Paul sign a military retired pay order per 10 U.S.C. § 1408 so that her share of Paul's future disbursements would be sent directly to her.[4] Paul refused to pay her or to sign the pay order.

¶4 Kathy then initiated contempt proceedings. Paul argued that Kathy's contempt action was untimely under Wis. Stat. § 893.40. That provision, a statute of repose, bars any "action upon a judgment or decree of a court" brought more than "20 years after the judgment . . . is entered." § 893.40. Paul reasoned that because the 1992 judgment was entered more than 20 years earlier, Kathy's contempt action was barred by § 893.40.

¶5 The circuit court disagreed, concluding that under our decision in Johnson v. Masters, 347 Wis. 2d 238, it had the equitable authority to enforce a pension-division obligation

---

[4] Pursuant to 10 U.S.C. § 1408, once served with a court order dividing a military pension, the secretary of the applicable armed-forces branch shall directly pay a former spouse his or her interest in the pension.

3

extending beyond 20 years, § 893.40 notwithstanding. The circuit court ordered Paul to pay Kathy her share of pension payments and to sign the military retired pay order within 30 days or it would find him in contempt of court. It stayed enforcement of that order pending Paul's appeal.

¶6 The court of appeals reversed, determining that § 893.40 barred Kathy's contempt action. The court of appeals distinguished Johnson on factual grounds and dismissed the equitable-authority rationale on which the circuit court relied because that reasoning did not garner a majority. We granted Kathy's petition for review.

II

¶7 We review whether Wis. Stat. § 893.40 bars the enforcement of a marital property division that was impossible until after the statutory period of repose had run. Resolving this question requires us to interpret the language of both the statute and the parties' agreement, matters which we review de novo. See Jones v. Est. of Jones, 2002 WI 61, ¶9, 253 Wis. 2d 158, 646 N.W.2d 280.

A

¶8 We resolved a similar question in Johnson v. Masters, 347 Wis. 2d 238. There, we held that Wis. Stat. § 893.40 did not bar an action to enforce a divorce judgment's pension division brought more than 20 years after the judgment was entered, because it was impossible to comply with the judgment for the first nine years. Johnson and Masters' divorce judgment, entered in 1989, required that Johnson be awarded half

4

of Masters' pension and that a "QDRO [qualified domestic relations order] shall be submitted to secure these rights." Id., ¶7. The parties could not immediately submit the required QDRO, however, because from the time of their divorce until the law was amended in 1998, Wisconsin law prohibited the assignment of state pension benefits via a QRDO. Id., ¶6. Upon learning in 2010 that Masters had retired a year earlier, Johnson filed a QDRO. When Masters refused to sign the required authorization, Johnson filed a post-judgment motion requesting that Masters release his pension information. Id., ¶9. Masters argued that Johnson's motion, filed 21 years after entry of the divorce judgment, was untimely under § 893.40. Id., ¶10. The circuit court agreed. Id., ¶11.

¶9 We reversed the circuit court's order, determining that § 893.40 did not bar Johnson's motion because then-existing law made it impossible for the parties to execute the required QDRO for the first nine years after the divorce judgment. Id., ¶¶19, 26. Johnson turned on our duty to interpret statutes to avoid "unreasonable results" and to "constru[e] each in a manner that serves its purpose." Id., ¶¶19-26 (citing State ex rel. Kalal v. Cir. Ct. for Dane Cnty., 2004 WI 58, ¶¶45-46, 271 Wis. 2d 633, 681 N.W.2d 110 and State v. Szulczewski, 216 Wis. 2d 495, 503, 574 N.W.2d 660 (1998)). Citing several prior decisions in which we rejected interpretations that would produce results contrary to both the statute's purpose and common sense, we concluded that it would be similarly illogical for § 893.40 to penalize Johnson for failing to do something not

5

possible. Id., ¶¶20-21; see also Teschendorf v. State Farm Ins. Cos., 2006 WI 89, ¶¶30-43, 293 Wis. 2d 123, 717 N.W.2d 258 (lead opinion) (rejecting a literal interpretation that both "produce[d] absurd results and defie[d] common sense").[5] We further recognized that this court elsewhere accommodates ongoing obligations in family law judgments that extend beyond 20 years. Johnson, 347 Wis. 2d 238, ¶¶22-24 (explaining that under SCR 72.01(11)-(14), records for family law matters must be retained for 30 years; and that Wis. Stat. § 767.01 authorizes courts to do "all acts and things necessary and proper" in family law actions "to carry their orders and judgments into execution"). Therefore, we held that § 893.40 did not bar Johnson's action because the 20-year clock for the statute of repose did not start running until 1998, when it first became possible to divide the pension according to the judgment. Id., ¶26.

¶10 Those same principles apply here. At the time Kathy and Paul's divorce judgment was entered in 1992, Paul's pension benefits would not be available to him until he turned 60 years old in February 2013, 21 years later. See 10 U.S.C.

---

[5] As further support for the principle that we should avoid literal interpretations that lead to unreasonable results, Johnson also cited Public Citizen v. U.S. Department of Justice, 491 U.S. 440, 453-64 (1989), Green v. Bock Laundry Mach. Co., 490 U.S. 504, 527-30, (1989) (Scalia, J., concurring), and Robbins v. Chronister, 402 F.3d 1047, 1050 (10th Cir. 2005), the last of which collected other United States Supreme Court decisions applying the "absurdity exception." Johnson v. Masters, 2013 WI 43, ¶20 n.12, 347 Wis. 2d 238, 830 N.W.2d 647.

§ 1331(a)(1) (1988) (requiring that a service member in Paul's situation be "at least 60 years of age" before becoming entitled to retired pay benefits). Because the divorce judgment required Paul to divide his pension only "when and if" the pension became "available" to him, that division was impossible prior to February 2013. The "when and if" condition also made it impossible for Kathy to judicially enforce the agreement during those first 21 years because that action would not be ripe until Paul's pension became available. See Tooley v. O'Connell, 77 Wis. 2d 422, 439, 253 N.W.2d 335 (1977). It would be unreasonable to interpret § 893.40 as barring enforcement now of a marital property division that was impossible to enforce during the 20 years prior.[6] See State v. Wachsmuth, 73 Wis. 2d 318, 326, 243 N.W.2d 410 (1976) (avoiding an "unreasonable" interpretation that would require someone to do the "impossible"); Hines v. Resnick, 2011 WI App 163, ¶16, 338 Wis. 2d 190, 807 N.W.2d 687 (same).

¶11 That result would also be unreasonable because it would render Paul's promised pension division illusory and deny

---

[6] While Kathy sought to enforce the divorce judgment via a contempt action, she could have alternatively enforced the marital settlement agreement approved by and incorporated into that judgment via a breach of contract action. See Miner v. Miner, 10 Wis. 2d 438, 443-44, 103 N.W.2d 4 (1960) (explaining that provisions in a marital settlement agreement approved by and incorporated, rather than "merged," into the divorce judgment and that are not modifiable by the court retain their contractual nature), abrogated on other grounds by Rohde-Giovanni v. Baumgart, 2004 WI 27, 269 Wis. 2d 598, 676 N.W.2d 452; see also 24A Am. Jur. 2d Divorce and Separation § 1010; 27B C.J.S. Divorce § 717.

Kathy the benefit she bargained for in the marital settlement agreement. When Paul promised to pay Kathy half his pension, the earliest he could do so was one year after the statute of repose would have run. See 10 U.S.C. § 1331(a)(1) (1988). Under Paul's reading of § 893.40, then, he made no real promise to pay Kathy half his pension. Rather, at Paul's sole "will and discretion," he could pay Kathy her share or not and be free of liability either way under the statute of repose. See Runzheimer Int'l, Ltd. v. Friedlen, 2015 WI 45, ¶45, 362 Wis. 2d 100, 862 N.W.2d 879 (quoted source omitted). Such a "promise" is illusory.

¶12 An illusory promise in a martial settlement agreement disturbs the balance of mutual obligations. Paul's promise to pay Kathy half his pension's value "when" it became available to him was critical to the rest of their agreement. See Washington v. Washington, 2000 WI 47, ¶30, 234 Wis. 2d 689, 611 N.W.2d 261 (explaining that a pension is one of a marriage's "most significant assets"). Had Kathy known that Paul's "promise" was illusory and unenforceable, she likely would have negotiated for a different distribution of the other marital assets. Thus, barring Kathy's enforcement action under the statute of repose would deny her the specific benefit for which she bargained. Paul, on the other hand, would keep the benefit of his bargain. See Johnson, 347 Wis. 2d 238, ¶¶24-25 (explaining that a former spouse "is in a poor position" to object to a property division to which that spouse agreed and "has obtained a benefit from it") (quoting Bliwas v. Bliwas, 47 Wis. 2d 635, 639-40, 178

N.W.2d 35 (1970)). Such an inequitable and unreasonable result runs contrary to our duty to give effect to the parties' express agreement that we presume was intended to be enforceable. See Variance, Inc. v. Losinske, 71 Wis. 2d 31, 36-37, 237 N.W.2d 22 (1976) (instructing courts to assume parties intend to enter enforceable agreements and construe them accordingly); Washington, 234 Wis. 2d 689, ¶17 (holding that divorce judgments be construed in the same way).

¶13 Our conclusion also comports with the purpose of § 893.40. The purpose of a statute of repose is to provide defendants relief, or "repose," from the uncertainty of potential liability arising from some long-ago act by extinguishing all causes of action once the statutory period has lapsed. See Kohn v. Darlington Cmty. Schs., 2005 WI 99, ¶62, 283 Wis. 2d 1, 698 N.W.2d 794. At its core, a statute of repose seeks to ameliorate the possibility that parties and courts will be stuck "litigating claims in which the truth may be obfuscated by death or disappearance of key witnesses, loss of evidence,

and faded memories."[7]  Aicher ex rel. LaBarge v. Wis. Patients Comp. Fund, 2000 WI 98, ¶27, 237 Wis. 2d 99, 613 N.W.2d 849.

¶14 None of those concerns exists here.  No uncertainty hangs over Paul.  He voluntarily promised to pay Kathy "when and if" his pension became available to him.  Although that event was not possible until 21 years later, once it occurred, his liability to Kathy was certain.  As for stale evidence concerns, a divorce judgment incorporating a settlement agreement uniquely obviates those concerns as the only evidence necessary to litigate that liability is the agreement itself.  And the circuit court is required to retain such agreements for at least "30 years after entry of judgment of divorce."  See SCR 72.01(11).  Therefore, barring Kathy's enforcement action under § 893.40 would not advance the statute's purpose.

B

¶15 Finally, we are unpersuaded by Paul's argument that, because Kathy submitted no military retired pay order to divide Paul's pension, she slept on her rights and the statue of repose bars her enforcement action.  To begin with, the existence of

---

[7] A statute of repose is unlike a statute of limitations in that a statute of limitations generally starts with an event uncertain, such as the occurrence or discovery of an injury, while a statute of repose sets an absolute outside date triggered by an event certain, such as the filing of a judgment. See Landis v. Physicians Ins. Co. of Wis., 2001 WI 86, ¶28, 245 Wis. 2d 1, 628 N.W.2d 893.  In that respect, a statute of limitation encourages plaintiffs not to sleep on their rights once they accrue; a statute of repose, on the other hand, is indifferent to the particular plaintiff's timeliness in bringing the action.  See Mueller v. TL90108, LLC, 2020 WI 7, ¶16, 390 Wis. 2d 34, 938 N.W.2d 566.

other non-judicial remedies provides no insight into how we should interpret a statute concerned with judicial actions. Wisconsin Stat. § 893.40 addresses only an "action upon a judgment . . . of a court," a judicial remedy; it mentions nothing about the availability of administrative or self-help remedies. Moreover, nowhere does Kathy and Paul's agreement require either party to submit a military retired pay order, a notable contrast with the agreement in Johnson. Cf. Johnson, 347 Wis. 2d 238, ¶7 (noting that the divorce agreement expressly required that a QDRO "be submitted to secure [Johnson's] rights" in Masters' pension). To the extent Paul desired that administrative convenience, he was equally responsible for filing the pay order, especially considering that he had better access to the relevant information regarding his service. Regardless, the agreement reserved for Paul the flexibility to fulfill his obligation in other ways, including by simply writing Kathy a check after he received each disbursement.[8] Thus, whether the parties submitted a military retired pay order is irrelevant to interpreting a statute of repose or applying it to their agreement.

## III

¶16 Barring Kathy's enforcement action under Wis. Stat. § 893.40 would produce an unreasonable result that would not

---

[8] Indeed, because the agreement is silent as to submitting a military retired pay order, Kathy may have been unable to compel Paul to sign or authorize such an order even within 20 years after the judgment was entered.

advance the statute's purpose. Accordingly, following our interpretation of § 893.40 in Johnson v. Masters, we conclude that § 893.40 poses no bar to Kathy's action.[9] Therefore, we reverse the decision of the court of appeals and reinstate the circuit court's order enforcing Paul's obligation to divide his pension.

*By the Court.*—The decision of the court of appeals is reversed.

---

[9] Because we decide this case under Johnson, we do not reach Kathy's argument that under Hamilton v. Hamilton, 2003 WI 50, ¶47, 261 Wis. 2d 458, 661 N.W.2d 832, the judiciary's inherent contempt power is unaffected by statutes of repose. See Md. Arms Ltd. P'ship v. Connell, 2010 WI 64, ¶48, 326 Wis. 2d 300, 786 N.W.2d 15.

¶17 ANNETTE KINGSLAND ZIEGLER, C.J. *(dissenting)*. Today, the majority sheds its judicial robes and takes its seat in the legislature. When we interpret the plain language of Wis. Stat. § 893.40, it is clear that Kathy Schwab's contempt action is barred. Instead of following the plain language of the statute, the majority calls into question every statute of repose by placing its policy choices above the plain text of the statute. However, our role in the judiciary is to interpret the law, not create it. Because I would not engage in judicial activism or legislate from the bench as the majority does in this case, I respectfully dissent.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

¶18 On February 25, 1992, Kathy and Paul Schwab entered into a Marital Settlement Agreement (the "Agreement") as part of their divorce proceedings. That Agreement is the focus of this case. The Agreement awarded Kathy "50% of the current pretax value of [Paul's] Air National Guard pension, [then] non-vested when and if it is available to [Paul]." The Agreement also awarded Paul "his non vested pension from Air National Guard subject to an order to pay one-half the present non vested value to [Kathy] when and if it is available to [Paul]."

¶19 To ensure Kathy and Paul fulfilled the terms of the Agreement, the Agreement stated that "[e]ach party recognizes that the terms of this [Agreement] will require each to cooperate in signing further documents to make the terms a reality and each party agrees to cooperate in signing such documents." Consequently, both Kathy and Paul were aware that

1

they may have to sign further documents to effectuate their rights under the Agreement.

¶20 After a total of 35 years in the Air National Guard, Paul retired from service in November 2008. Paul applied for his Air National Guard pension in February 2013 when he was 60 years old——the earliest he was able to receive his pension. See 10 U.S.C. § 12731. Neither Kathy nor Paul took steps to secure Kathy's allocation of Paul's pension. Paul never paid Kathy any portion of his pension.

¶21 In November 2017, Kathy filed an affidavit to show cause for contempt for Paul's failure to pay her half of his Air National Guard pension. The circuit court issued an order to show cause in December 2017. Paul moved to dismiss the order to show cause for contempt.

¶22 After an evidentiary hearing, the circuit court ordered that Paul must sign an order to divide his pension, but did not find him in contempt. Rather, the court stated that it would find him in contempt if he refused to sign the order dividing the pension within 30 days of the court's order.

¶23 Paul appealed, and the court of appeals reversed, holding "that [Kathy's] contempt motion is barred by the twenty-year time constraint set forth in Wis. Stat. § 893.40." Schwab v. Schwab, 2020 WI App 40, ¶23, 392 Wis. 2d 660, 946 N.W.2d 241. Kathy petitioned this court for review, which we granted.

## II. ANALYSIS

¶24 Unlike the majority, I begin with the plain language of Wis. Stat. § 893.40 to determine whether it bars Kathy's

2

contempt action. Next, I analyze Johnson v. Masters, 2013 WI 43, 347 Wis. 2d 238, 830 N.W.2d 647, explaining that it is inapplicable to Kathy's case. Finally, I address the majority's evisceration of statutes of repose and our precedent.

A. Wisconsin Stat. § 893.40 Bars Kathy's Contempt Action.

¶25 Kathy's contempt action is barred by Wis. Stat. § 893.40 because the legislature has made no exception to the time bar in the statute that applies to Kathy's contempt action. To understand the application of § 893.40, we must interpret the plain language of the statute. "[W]e have repeatedly held that statutory interpretation 'begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry.'" State ex rel. Kalal v. Cir. Ct. for Dane Cnty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (quoted source omitted).

¶26 Wisconsin Stat. § 893.40 provides that "action upon a judgment or decree of a court of record of any state or of the United States shall be commenced within 20 years after the judgment or decree is entered or be barred." The nature of the time constraints set forth in § 893.40 render it a statute of repose, in that it "limits the time period within which an action may be brought based on the date of an act or omission." Hamilton v. Hamilton, 2003 WI 50, ¶29, 261 Wis. 2d 458, 661 N.W.2d 832.

¶27 "Statutes of limitation and statutes of repose represent legislative policy decisions that dictate when the courthouse doors close for particular litigants." Aicher ex

3

rel. LaBarge v. Wis. Patients Comp. Fund, 2000 WI 98, ¶27, 237 Wis. 2d 99, 613 N.W.2d 849. Whereas "[a] statute of limitations usually establishes the time frame within which a claim must be initiated after a cause of action actually accrues," a statute of repose "limits the time period within which an action may be brought based on the date of the act or omission." Id., ¶26. "Statutes of repose thus bear no relation to the accrual of a cause of action and can toll before an injury is discovered or even before an injury has occurred." Id.

¶28 Statutes of repose inherently create unfair situations. As we have previously explained, "[c]ourts may shudder at the unfairness visited by statutes of repose." Id., ¶45. However, despite the unfairness created, "statutes of repose inherently are policy considerations better left to the legislative branch of government." Id., ¶54. Thus, when the legislature expressly chooses not to recognize a claim after a certain period, "[w]e cannot preserve a right to obtain justice" because "none in fact exists." Id. "Were we to extend a right to remedy outside the limits [the legislature set], we effectively would eviscerate the ability of the legislature to enact any statute of repose." Id.

¶29 To alleviate the unfairness that Wis. Stat. § 893.40 creates, the legislature has enacted two exceptions to the statute of repose. See § 893.40. The first exception is for deficiency judgments in mortgage foreclosures, set forth in Wis. Stat. § 846.04(2) and (3). See § 893.40. The second exception is for actions relating to child or family support, set forth in

4

Wis. Stat. § 893.415.[1]  See id.  Given that the legislature has enacted these two exceptions to the statute, we cannot now create new exceptions to § 893.40.  See State v. Delaney, 2003 WI 9, ¶22, 259 Wis. 2d 77, 658 N.W.2d 416 ("Under the well-established canon of expressio unius est exclusio alterius (the expression of one thing excludes another), where the legislature specifically enumerates certain exceptions to a statute, we conclude, based on that rule, that the legislature intended to exclude any other exception.").

¶30  Applying this understanding of Wis. Stat. § 893.40 to this case, it is clear that Kathy's contempt action is barred. In this case, the act that triggered the statute of repose was the entry of the judgment.  Hamilton, 261 Wis. 2d 458, ¶29. Thus, when the circuit court entered the judgment of divorce on March 17, 1992, the 20-year time clock began to run.  Kathy did not file her contempt action by March 17, 2012.  Rather, she filed her contempt action in November 2017.  Moreover, Kathy's action is neither an action on a deficiency judgment in a

---

[1] The legislature added the second exception——for actions relating to child or family support——in response to our decision in Hamilton v. Hamilton, 2003 WI 50, 261 Wis. 2d 458, 661 N.W.2d 832.  See 2003 Wis. Act 287.  In Hamilton, we specifically held that "Wis. Stat. § 893.40 governs the time within which a party may bring an independent action to collect child support arrearages that have amassed after July 1, 1980." Hamilton, 261 Wis. 2d 458, ¶50.  The legislature clearly abrogated this holding when it enacted 2003 Wis. Act 287, which created a specific exception to section 893.40 for actions relating to child or family support.  Accordingly, our precedent reflects our deference to the legislature in making decisions regarding both when a statute of repose applies and specific exceptions to a statute of repose.

5

mortgage foreclosure nor an action relating to child or family support; it is for contempt for failing to comply with a property division in a Marital Settlement Agreement. Consequently, Kathy's action is barred under the plain language of the statute and no exception applies.

B. Johnson v. Masters Does Not Demand a Different Result.

¶31 To avoid the plain language of the statute, the majority relies upon Johnson v. Masters, 347 Wis. 2d 238, to conclude that it would be unreasonable to apply Wis. Stat. § 893.40 to bar Kathy's contempt action. Majority op., ¶10. However, this misinterprets our holding in Johnson. When properly interpreted, Johnson does not prevent applying § 893.40 in this case.

¶32 In Johnson, we addressed a unique factual scenario when the petitioner was legally incapable of filing a qualified domestic relations order (QDRO). In that case, the Marital Settlement Agreement between Johnson and Masters provided that "[t]he Petitioner shall be awarded [half] of the value of the Respondent's Wisconsin Retirement System benefits accrued from the date of marriage thr[ough] the date of divorce. A QDRO shall be submitted to secure these rights." Johnson, 347 Wis. 2d 238, ¶7. At the time of the divorce in 1989, Johnson was unable to file a QDRO under state law. Id., ¶6. This changed in 1999 when the legislature adopted 1997 Wis. Act 125, which permitted the Wisconsin Retirement System to accept QDROs related to certain divorces, including Johnson and Masters' divorce. Id. More than 20 years after the divorce judgment,

6

Johnson filed an action upon the judgment, requesting an order to require Masters to release his pension information. Id., ¶10. The circuit court applied Wis. Stat. § 893.40 and barred Johnson's action, which was eventually appealed to this court.

¶33 In our review, we stated that "the application of Wis. Stat. § 893.40 in certain circumstances may produce results that 'def[y] both common sense and the fundamental purpose' of the statute." Id., ¶21. "The judgment here has the flaw, as to the pension award provision, that under the statute then in effect the pension was not assignable." Id. The "dispositive fact" in that case was "that the statute operated to prohibit pension interests from being assigned at the time the judgment was entered." Id., ¶22 (emphasis added). Thus, because the law prohibited the assignment, application of Wis. Stat. § 893.40 would be unreasonable.

¶34 The present divorce between Kathy and Paul is remarkably different from the divorce in Johnson because, at the time of the divorce, the law permitted an assignment of Paul's Air National Guard pension to Kathy, and Kathy could secure her rights in his pension.

¶35 Paul's Air National Guard pension is governed by federal law. To divide a military retiree's retired pay, a military retired order must be sought pursuant to 10 U.S.C. § 1408.[2] Specifically, to secure an interest in the military retired pay, a copy of the final divorce decree must be served

---

[2] This statute was enacted in 1982, and was in effect when Paul and Kathy entered the Agreement in 1992. Pub. L. 97-252, Title X, § 1002(a).

7

on the appropriate agent for the Secretary of Defense concerned with court orders. 10 U.S.C. § 1408(b)(1)(A). That court order can also be served prior to the retirement of the servicemember. See 10 U.S.C. § 1408(a)(4)(B). When a servicemember is not receiving payments on the effective service date of the court order, the Secretary of Defense makes payments not later than 90 days after the date on which the servicemember first becomes entitled to receive retired pay. 10 U.S.C. § 1408(d)(1).

¶36 Accordingly, federal law permitted Paul to assign Kathy her interest in his Air National Guard pension, and Kathy could have secured that assignment. During the 20 years following their divorce, Kathy could have sought a military pay order pursuant to 10 U.S.C. § 1408, and served a copy of her divorce decree on the appropriate agent of the Secretary of Defense. If Paul refused to sign the military pay order, Kathy then could have filed a contempt motion pursuant to the provision of the Agreement that provides that "each party agrees to cooperate in signing such documents." After receiving the military pay order, Kathy would have received the portion of Paul's Air National Guard pension that she was given as part of the Agreement.

¶37 Because Kathy did not face a legal barrier to the assignment of her interest, Johnson is inapplicable to Kathy. Moreover, the law specifically included a system by which she could secure her rights in Paul's pension. Rather than follow that system, Kathy delayed and fell afoul of Wis. Stat. § 893.40. Consequently, Kathy's contempt action is now barred,

8

and neither Johnson nor the statutory exceptions can save her claim.

### C. The Majority Reinvents Statutes of Repose to Satisfy Its Preferred Policy Outcomes.

¶38 Rather than follow this straightforward analysis, the majority "eviscerate[s] the ability of the legislature to enact any statute of repose." Aicher, 237 Wis. 2d 99, ¶54. The majority never once grapples with the language of the statute. Instead, the majority resorts to the general purposes of statutes of repose to determine that the text of the statute could not possibly mean what it says. See majority op., ¶¶13-14. But the majority's reliance on purpose cannot contravene the plain text of the statute. See Hamilton, 261 Wis. 2d 458, ¶45 (noting that the court's holding ran "counter to the desire previously expressed by the legislature and courts" but still concluding that the statute of repose applied).

¶39 Because the majority's logic lacks any sort of limiting principle, all statutes of repose must fall because statutes of repose may often cause a result that the majority deems "unreasonable." For example, under a different statute of repose, Wis. Stat. § 893.35, a plaintiff is barred from bringing a claim for replevin after six years from when the conversion occurs, even if the plaintiff learned of the conversion ten years later. See, e.g., Mueller v. TL90108, LLC, 2020 WI 7, 390 Wis. 2d 34, 938 N.W.2d 566. Applying the majority's conclusion, it is clearly unreasonable for a plaintiff who never learns of the conversion during the statute of repose period to bring a

9

replevin action. Consequently, the majority would purport to hold, the statute of repose cannot apply to such a plaintiff. However, this is exactly what happens in statute of repose cases "[b]ecause, by their nature, statutes of repose can sometimes arbitrarily extinguish a prospective plaintiff's cause of action," even before the plaintiff learns of the claim. Aicher, 237 Wis. 2d 99, ¶32.

¶40 As we cut away the flowery language and demystify the majority's argument, the truth reveals itself: the majority simply disagrees with the policy decision of the legislature.[3] Such a power grab runs afoul of our role as judges to declare the law, not create it. See Marbury v. Madison, 5 U.S. (1 Cranch) 137, 177 (1803). Our precedent is clear: "statutes of repose inherently are policy considerations better left to the legislative branch of government." Aicher, 237 Wis. 2d 99, ¶54.

---

[3] To be sure, I recognize that the policy underlying application of Wis. Stat. § 893.40 to certain family court matters may require attention from the legislature, as I did in Johnson v. Masters, 2013 WI 43, ¶¶39-40, 347 Wis. 2d 238, 830 N.W.2d 647 (Ziegler, J., concurring). However, it is not our role to make such policy decisions——that is left to the legislature.

Accordingly, we must respect the choice the legislature made when it enacted Wis. Stat. § 893.40 and bar Kathy's action.[4]

### III. CONCLUSION

¶41 The majority sheds its judicial robes and takes its seat in the legislature. When we interpret the plain language of Wis. Stat. § 893.40, it is clear that Kathy Schwab's contempt action is barred. Instead of following the plain language of the statute, the majority calls into question every statute of repose, placing its policy choices above the plain text of the statute. However, our role in the judiciary is to interpret the law, not create it. I would not engage in judicial activism or legislating from the bench as the majority does in this case.

¶42 For the foregoing reasons, I respectfully dissent.

¶43 I am authorized to state that Justices REBECCA GRASSL BRADLEY and BRIAN HAGEDORN join this dissent.

---

[4] The majority also creates whole-cloth a new argument that neither party raised: that Paul's promise of his pension was illusory. Despite the majority's smoke and mirrors, Paul's promise was not illusory. The majority asserts that it was at Paul's "will and discretion" whether he would pay Kathy, but this is simply untrue. Majority op., ¶11. Pursuant to the Agreement, Paul was obligated to pay Kathy, and Kathy could secure her rights to receive payment by filing a military pay order pursuant to 10 U.S.C. § 1408. Accordingly, the Agreement was not subject to Paul's "will and discretion." Rather, it was subject to Kathy exercising her rights, which she failed to do.

11

¶44 REBECCA GRASSL BRADLEY, J. *(dissenting).* I join Chief Justice Annette Ziegler's dissent in full. I write separately because the majority does not appreciate the distinction between a contract and a court judgment. At the time Paul Schwab reneged on his agreement to pay half of his pension to Kathy Siech, her action to enforce the divorce judgment was time-barred, but a contract claim was not. The law would have afforded Siech the fair and equitable result the majority gives her, had she brought a viable claim. Because she failed to do so, the majority crafts what it considers to be a "reasonable" result but not one based in the law.[1]

---

[1] The majority repeatedly suggests the court bears some obligation to disregard the statute of repose whenever it leads to "unreasonable" results. If courts ignored the law every time they deem a result unreasonable, the rule of law would be supplanted by the rule of judges. In support of this disturbingly subjective standard, the majority invokes the absurdity doctrine. The majority abuses the canon. The absurdity doctrine applies only to textual errors that may be fixed "by changing or supplying a particular word or phrase whose inclusion or omission was obviously a technical or ministerial error." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 238 (2012); see State ex rel. Associated Indem. Corp. v. Mortensen, 224 Wis. 398, 402, 272 N.W. 457 (1937) (stating that the absurdity canon does "not . . . justify a court in amending the statute or giving it a meaning to which its language is not susceptible merely to avoid what the court believes are inequitable or unwise results"). Just because a court dislikes the outcome does not mean it is absurd. Mellen Lumber Co. v. Indus. Comm'n of Wisconsin, 154 Wis. 114, 119, 142 N.W. 187 (1913) ("The statute in question may be inequitable, but this does not make it absurd."). As Chief Justice Ziegler's dissent explains, statutes of repose often extinguish claims before they even accrue, which may be considered unfair but it certainly isn't "absurd." Nor does Johnson v. Masters, 2013 WI 43, 347 Wis. 2d 238, 830 N.W.2d 647, support setting aside the statute of repose, as Chief Justice Ziegler's dissent makes clear. Regardless, Johnson was wrongly decided and should be

1

¶45 A Marital Settlement Agreement (MSA) is a contract under the law, as explained in my dissent in Pulkilla v. Pulkilla, 2020 WI 34, 391 Wis. 2d 107, 941 N.W.2d 239. Because Schwab's and Siech's MSA is a contract, the statute of limitations in Wis. Stat. § 893.43——applicable to "actions on contract"——would have applied to Siech's breach of contract claim (if she had brought one) for Schwab's failure to pay her 50 percent of his military pension as he agreed in the MSA. Instead of asserting a breach of contract claim in the circuit court, Siech brought a contempt motion based upon the divorce judgment. Accordingly, this court's review is limited to Wis. Stat. § 893.40——Wisconsin's statute of repose for an action on judgment or decree. Chief Justice Ziegler's dissent correctly concludes that Siech failed to commence her action within 20 years after the circuit court entered the divorce judgment; hence, Siech is statutorily barred from pursuing her claim.

¶46 In my dissent in Pulkilla, I exhaustively analyzed long-standing precedent establishing the contractual nature of an MSA and it is not necessary to repeat that analysis in this opinion. In sum, "MSAs have been treated as contracts by this court for at least 83 years." Pulkilla, 391 Wis. 2d 107, ¶48

---

overturned. In that case, the court justified its decision to disregard the statute of repose because "the application of Wis. Stat. § 893.40 in certain circumstances may produce results that 'def[y] both common sense and the fundamental purpose' of the statute." Johnson, 347 Wis. 2d 238, ¶21. The court was wrong on both counts. The legislature has the prerogative to enact a statute that may produce outcomes which defy "common sense" so long as the statute comports with the constitution. And courts have no authority to disregard the plain text of a statute in order to achieve what the court may divine to be its "purpose."

2

(Rebecca Grassl Bradley, J., dissenting). Since at least 1935, this court has referred to a "marriage settlement" as a "marriage settlement contract," In re Will of Koeffler, 218 Wis. 560, 564-65, 260 N.W. 638 (1935) (emphasis added), and has consistently applied principles of contract law to MSAs. Pulkilla, 391 Wis. 2d 107, ¶¶48-49 (Rebecca Grassl Bradley, J., dissenting) (collecting over 35 cases from this court and the court of appeals). Academic literature and dictionary definitions of marital settlement agreements support this court's history of interpreting MSAs as contracts. Id., ¶¶50-51 (collecting sources); see Lauren M. Ilvento, The Application of Kenney System, Inc. v. Continental Ins. Co. to Modification of Child Custody Proceedings, 83-May Fla B.J. 41, 43 (2009) ("In the context of family law, marital settlement agreements and mediated agreements are contracts and are to be interpreted pursuant to the provisions of contract law.") (emphasis added); Martial Settlement Agreement, Black's Law Dictionary 604, 1158 (11th ed. 2019) ("A contractual agreement that sets out divorcing spouses' rights and responsibilities regarding property, alimony, custody, visitation, and child support.") (emphasis added).

¶47 MSAs are bargained-for agreements between two parties, and courts must uphold them, absent any violations of public policy. Pulkilla, 391 Wis. 2d 107, ¶52 (Rebecca Grassl Bradley, J., dissenting); see Topolski v. Topolski, 2011 WI 59, ¶7, 335 Wis. 2d 327, 802 N.W.2d 482 (interpreting an MSA to "plac[e] the husband and wife in the same position" but for the occurrence of

3

an event and "giv[ing] both the husband and wife exactly what they bargained for in the Martial Settlement Agreement"). Incorporating an MSA into a divorce judgment does not change the former's status as a contract. Pulkilla, 391 Wis. 2d 107, ¶53 (Rebecca Grassl Bradley, J., dissenting). Like all other contracts, we interpret MSAs according to their "plain language" and "consistent with what a reasonable person would understand the words to mean under the circumstances." Marx v. Morris, 2019 WI 34, ¶63, 386 Wis. 2d 122, 925 N.W.2d 112 (quoted source omitted). "Where the terms of a contract are clear and unambiguous, we construe the contract according to its literal terms." Gorton v. Hostak, Henzel & Bichler, S.C., 217 Wis. 2d 493, 506, 577 N.W.2d 617 (1998) (citation omitted).

¶48 These principles apply to the MSA Schwab and Siech negotiated and signed in 1992. The MSA states that "[Siech] shall receive 50% of the current pre-tax value of [Schwab's] Air National Guard pension, presently non-vested when and if it is available to [Schwab]." The MSA further provides that both parties agreed the pension provision was a "full, fair, and final division of their marital property." The parties also agreed that the MSA's provisions "shall be the terms and conditions of relief in this action." The circuit court approved the MSA and incorporated its provisions into the divorce judgment. As pertinent to this dispute, the circuit court stated in the divorce judgment that "[t]he parties have entered into a written agreement concerning the division of their marital property . . . . Their agreement is reasonable

4

under the facts as the court has determined those facts, and shall be included and incorporated in the conclusions of law and judgment in this action."

¶49 In November 2008, Schwab retired from the Air National Guard. He started receiving his military pension in February 2013. Despite Schwab's pension having vested, he never paid Siech 50 percent of its value as the MSA required. In 2017, Siech brought a contempt motion against Schwab, contending that he intentionally failed to comply with the circuit court's 1992 divorce judgment. Siech did not bring a breach of contract claim. In resolving Siech's contempt motion, the circuit court concluded that Siech could recover her 50 percent share of the military pension as the parties agreed in the MSA incorporated into the divorce judgment. According to the circuit court, Wis. Stat. § 893.40 did not bar Siech's action. A statute of repose, § 893.40 states that "an action upon a judgment or decree of a court . . . shall be commenced within 20 years after the judgment or decree is entered or be barred." Schwab appealed the circuit court's decision to the court of appeals, which reversed the circuit court's decision. The court of appeals held that Siech's claim was time-barred under the statute of repose because 20 years had passed before Siech brought her contempt motion to enforce the divorce judgment.

¶50 As Chief Justice Ziegler's dissent correctly concludes, Wis. Stat. § 893.40 indeed bars Siech's action. The circuit court issued the divorce judgment in 1992, and Siech did not bring a contempt motion until 2017——more than 20 years after

5

the judgment was entered. Even though Schwab's military pension did not vest until 2013, § 893.40 nonetheless bars Siech's claim because a statute of repose begins to run regardless of when a claim accrues or is discovered and it cuts off any claim once the period of repose lapses. Hamilton v. Hamilton, 2003 WI 50, ¶29, 261 Wis. 2d 458, 661 N.W.2d 832 ("A statute of repose . . . limits the time period within which an action may be brought based on the date of an act or omission. A statute of repose does not relate to the accrual of a cause of action. In fact, it may cut off litigation before a cause of action arises.").

¶51 While the statute of repose extinguished Siech's action on the divorce judgment, she could have timely brought a breach of contract claim based on the MSA. As explained in my dissent in Pulkilla, MSAs are stand-alone contracts, regardless of whether they are incorporated into a divorce judgment. Pulkilla, 391 Wis. 2d 107, ¶53 (Rebecca Grassl Bradley, J., dissenting). A breach of contract claim for Schwab's failure to pay 50 percent of his military pension to Siech——as the parties agreed under the MSA——would have been subject to the statute of limitations in Wis. Stat. § 893.43 and not the statute of repose in Wis. Stat. § 893.40. Under § 893.43, "an action upon any contract obligation, or liability, express or implied, including an action to recover fees for professional services, except those mentioned in s. 893.40, shall be commenced within 6 years after the cause of action accrues or be barred." (Emphasis added.)

6

¶52 Unlike the statute of repose in Wis. Stat. § 893.40, the statute of limitation time period in Wis. Stat. § 893.43 begins to run when the claim accrues. See Hamilton, 261 Wis. 2d 458, ¶29 ("A statute of limitations usually establishes the time frame within which a claim must be initiated after a cause of action actually accrues."); Yocherer v. Farmers, 2002 WI 41, ¶10, 252 Wis. 2d 114, 643 N.W.2d 457 ("The parties do not dispute that the applicable statute of limitations is Wis. Stat. § 893.43," which provides parties 6 years to commence an action after "a cause of action accrues."). It is undisputed that Schwab's military benefits vested in 2013 and Siech's claim accrued upon Schwab's failure to pay her that year; accordingly, Siech had until 2019 to bring a breach of contract claim against Schwab for violating the MSA, at which time the statute of limitations would have expired. The existence of this alternative avenue by which Siech could have compelled Schwab to comply with their agreement belies the majority's assertion that it was "impossible" for Siech to enforce the MSA.

¶53 The majority seems to think the statute of repose applies to a breach of contract claim, declaring that "it was impossible for Paul to perform on his promise——and therefore for Kathy to enforce that promise——until after the statutory period of repose had run." Majority op., ¶1. Of course, the statute of repose in Wis. Stat. § 893.40 applies only to actions on judgments, not breach of contract claims. Although Wis. Stat. § 893.43 references § 893.40 with respect to other types of claims, the statute of repose would not have applied to Siech's

7

breach of contract claim (had she brought one). Because the MSA is a stand-alone contract, independent of the divorce judgment, an action for its breach would not be subject to the 20-year statute of repose applicable to an action to enforce the divorce judgment. It was, therefore, quite possible for Siech to enforce Schwab's promise——if she had brought a claim that was not time-barred.

¶54 Siech never brought a breach of contract claim, and relied solely on a contempt action to enforce the divorce judgment in order to compel Schwab to fulfill his pension payment obligations to her under the MSA. We cannot convert her contempt action into one for breach of contract and must apply the law to the action she actually filed. See, e.g., Wolnak v. Cardiovascular & Thoracic Surgeons of Cent. Wisconsin, S.C., 2005 WI App 217, ¶¶46-52, 287 Wis. 2d 560, 706 N.W.2d 667 (denying relief under a breach of contract claim the plaintiff failed to plead). As Chief Justice Ziegler's dissent explains more fully, the action Siech chose to bring is barred by the statute of repose. Avoiding a result it deems "inequitable and unreasonable," the majority designs an outcome that may comport with its conceptions of fairness but it does not comport with the law. I dissent.